# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor-in-interest to CHRISTIANA BANK & TRUST COMPANY, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO: _____ |
| UNIVERSITAS EDUCATION, LLC, and RIDGEWOOD FINANCE II, LLC, as successor-in-interest to RIDGEWOOD FINANCE, INC., | § § § § § | |
| *Defendants*. | § § | |

## DECLARATION OF SHANNON A. LANG IN SUPORT OF DEFENDANT'S NOTICE OF REMOVAL

I, Shannon A. Lang, declare and state as follows:

1.      I am an attorney with Sturm Law, PLLC, and represent Defendant Universitas Education, LLC ("Universitas"), in the above-captioned action.  I have personal knowledge of the facts stated herein and am authorized to submit this declaration in support of Defendant's Notice of Removal.

2.      Attached hereto as Exhibit A1 is a true and correct copy of the Notice of Arbitration and Statement of Claim filed by Universitas on April 6, 2015, with the American Arbitration Association.

3.      Attached hereto as Exhibit A2 is a true and correct copy of the results of my search of the State of Connecticut's "C.O.N.C.O.R.D." database, reflecting corporate details concerning Ridgewood Finance II, LLC.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 10, 2015.

Shannon A. Lang

# EXHIBIT A1

**AMERICAN ARBITRATION ASSOCIATION**
**NEW YORK, NEW YORK**

---

UNIVERSITAS EDUCATION, LLC,

                    *Claimant,*

v.

WILMINGTON SAVINGS FUND
SOCIETY, FSB, as successor-in-interest to
CHRISTIANA BANK AND TRUST
COMPANY,

                    *Respondent.*

---

**NOTICE OF ARBITRATION**
**AND**
**STATEMENT OF CLAIM**

## I.    Nature of the Case

1.      This is a case about a professional trust company that permitted and facilitated the looting of one of its trusts by its business associates, including a convicted fraudster awaiting sentencing on multiple federal charges.

2.      Both before and after its acquisition by Wilmington Savings Fund Society, FSB ("WSFS"), in late 2010, Christiana Bank and Trust Company ("Christiana") was a Trustee of the Charter Oak Trust Welfare Benefit Plan.  (The Trust and Plan are referred to collectively as the "Trust.")  The Trust was conceived of and operated by Daniel E. Carpenter, a convict and current federal inmate with a history of stealing other people's money.

3.      Universitas was a beneficiary of the Trust.

4.      As Trustee, Christiana had plenary power over the Trust's affairs and direct responsibility for ensuring the proper disposition of benefits to Plan beneficiaries, including Universitas.

5.      However, despite its express agreement to protect Trust beneficiaries, Christiana knowingly disregarded its fiduciary duties and enabled and assisted Carpenter and his brother-in-law, Wayne H. Bursey, to loot the Trust of more than $30,000,000 payable to Universitas.

6.      Carpenter and Bursey were subsequently indicted on 24 federal criminal charges of money laundering and illegal monetary transactions related to their theft of Universitas' benefits.  The case against Carpenter is pending in federal court in Connecticut.  Mr. Bursey recently passed away.

7.      On information and belief, WSFS/Christiana is under federal investigation for its role in the looting of the Trust.

8.      Universitas now brings claims against WSFS/Christiana for breach of fiduciary duty, fraud, negligence, and statutory theft and seeks recovery of the Trust benefits wrongfully diverted and withheld.

II.    **Parties**

A.    **Universitas Education, LLC**

9.      Universitas Education, LLC ("Universitas"), is the research and development arm of its subsidiary, Destination Universitas Foundation, a charitable foundation based in New York.  Operated by members Donna Vassar and Sharon Siebert, Universitas develops and provides programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

10.     In 2007, Universitas began development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.   In developing the property and its related programs, Ms. Vassar and Ms. Seibert tapped their deep and broad relationships with leaders around the world to generate interest and funding.

11.     Within a year, the project was receiving international attention and exposure. Universitas had executed a letter of intent for the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing funding proposals.

12.     One contributor to the project was Sash Spencer.  Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas.  Mr. Spencer died unexpectedly in June 2008.  Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

**B.     WSFS/Christiana**

13.     Wilmington Savings Fund Society, FSB ("WSFS"), is the successor-in-interest to Christiana Bank and Trust Company ("Christiana").  On information and belief, WSFS is a Delaware citizen with its principal place of business at 500 Delaware Avenue, Wilmington, Delaware, 19801.  Christiana, a division of WSFS, provides a range of trust, asset management, and fiduciary services to corporations, trusts, and high-net-worth individuals.

14.     In 2006, Christiana accepted an appointment as "Insurance Trustee" of the Charter Oak Trust Welfare Benefit Plan.  In so doing, Christiana expressly agreed to perform its duties as set forth under the "Charter Oak Trust Declaration of Trust," which established and governed the Trust, detailed its purpose, and, *inter alia*, set forth the responsibilities and obligations of its Insurance Trustee.

15.     As set forth more fully below, WSFS/Christiana failed to fulfill its duties and obligations as Trustee, and through reckless neglect and affirmative inaction, sat idly by while Carpenter stole millions of dollars intended for Universitas.

16.     As a result of WSFS/Christiana's wrongdoing, Universitas has been forced to engage in distracting, costly, and time-consuming litigation.  The expenses and delays have resulted in a serious set-back and loss of momentum for the Lake Las Vegas project.  Program development has been interrupted and investors are moving on to other projects.

17.     Through this arbitration, Universitas seeks the life insurance proceeds wrongfully diverted as a result of WSFS/Christiana's wrongdoing, losses incurred in seeking recovery of the proceeds, and statutory and other penalties to which it is entitled and which can serve as a reminder to trust companies such as WSFS/Christiana of the special responsibilities and obligations they have as trustees.

## III.    **Jurisdiction & Venue**

18.     The Charter Oak Trust Declaration of Trust, attached hereto as Exhibit A, provides that "[a]ny and all disputes regarding the Trust or the Plan shall be settled by Arbitration."  Decl. of Tr., ¶ 13.07.  In particular, the Declaration of Trust requires that "[a]ny controversy or claim arising out of or related to a denial of benefits hereunder or any and all other disputes, claims or controversies (whether or not related to benefits) arising under the Plan & Trust shall be settled by binding arbitration before a single arbitrator in New York, New York, under the commercial arbitration rules of the American Arbitration Association."  *Id.* ¶ 8.02(d).

19.     The Declaration of Trust requires that it "shall be construed, regulated and administered by and under the laws of the State of Connecticut."  *Id.* ¶¶ 8.02(d), 13.06.

**IV.**    **Factual Background**

    **A.**    **Carpenter Establishes The Charter Oak Trust**

20.    The Trust marketed and represented itself to be a multiple-employer welfare benefit plan operating under Sections 419 and 419A of the Internal Revenue Code.  The Trust purported to offer small- and medium-sized businesses the opportunity to provide life insurance benefits for their executives.  The Trust claimed to offer various tax benefits to participating employers.

21.    In order to comply with applicable federal law, the Trust was to own and be the named beneficiary on life insurance policies purchased by participating employers on the lives of covered employees.  Covered employees would then identify a beneficiary of their Trust benefits.  Upon the employee's death, life insurance proceeds would be paid to the Trust, which was then to pass on the proceeds to the employee's beneficiary, less certain identified expenses.

22.    Indeed, the Declaration of Trust states that the Trust was expressly established "for the exclusive benefit of the Participants, their dependents and, in the case of life benefits, their beneficiaries . . . ."  Decl. of Tr., at 1.

23.    The Declaration of Trust required the appointment of two trustees.

24.    The first, acting as Plan Sponsor, "Named Fiduciary," and corporate trustee, was Nova Group, Inc. ("Nova"), operating through its President, Wayne H. Bursey.

25.    However, unbeknownst to Trust participants, Nova was not a bona-fide business, but the judicially-determined alter ego of Daniel E. Carpenter, a convicted fraudster who operated the Trust and numerous other sham companies from an office complex in Simsbury, Connecticut.  Similarly unbeknownst to Trust participants, Carpenter had installed his brother-in-law, Wayne H. Bursey, as Nova's "President," *i.e.*, figurehead.

26.     At the time Nova purported to establish the Trust, Carpenter had been convicted of 19 counts of mail and wire fraud stemming from his operation of a bogus escrow program through which he misappropriated client funds and funneled them—unsuccessfully, to the tune of approximately $9,000,000—into options trading intended for his personal benefit.

27.     The second, an "Insurance Trustee," was to be a "nationally known trust company or a bank trust department acceptable to and appointed by a third-party with an interest in the . . . Trust . . . ."  Decl. of Tr., ¶ 2.13.

28.     The "third party with an interest in the . . . Trust" was Ridgewood Finance, Inc., a private equity firm that had agreed to provide the Trust with $35,000,000 in financing to procure and pay for life insurance policies issued on Trust participants.

29.     Ridgewood, with Nova's consent, appointed Christiana as Insurance Trustee via a written Appointment Agreement executed in or around December 12, 2006, wherein Christiana expressly "accept[ed] its appointment as Insurance Trustee . . . and agree[d] to perform its duties as Insurance Trustee under the Declaration of Trust."

30.     Christiana's identity as Insurance Trustee was not disclosed to Trust participants.

**B.     Christiana Goes into Business with Carpenter**

31.     While Christiana's identity remained concealed from Trust participants, Carpenter's identity as the Trust operator was no secret. Christiana should have been deeply concerned about going into business with Carpenter, but instead, eagerly partnered with him to operate—and loot—the Trust.

32.     An insurance agent by profession, Carpenter is an attorney by training, with a history of engaging in sham, questionable, or outright fraudulent business schemes.

33.     In 2004, Carpenter was indicted by a Massachusetts federal grand jury for mail and wire fraud, and named in civil suits, arising out of his mishandling of client funds while he acted as the Chairman of Benistar, Ltd., and its subsidiaries—entities which were subsequently found by Massachusetts courts to be Carpenter's alter egos.

34.     On January 14, 2005, the Connecticut Statewide Grievance Committee found that Carpenter had committed severe dishonesty, fraud, deceit, and misrepresentation in connection with his handling of client funds—namely, via his unauthorized transfer of client escrow funds from trust accounts into personal trading accounts. Ultimately, Carpenter's license to practice law was indefinitely suspended.

35.     In 2005 (and on retrial in 2008), Carpenter was found guilty of 19 counts of mail and wire fraud stemming from the 2004 indictment.  After exhausting his appeals, on January 28, 2014, Carpenter was sentenced to three years in prison and three years' probation.  Carpenter reported to prison in June 2014.

36.     By 2006, when Christiana was considering whether to become the Charter Oak Trust Insurance Trustee, Carpenter's 2004 indictment, 2005 convictions, and 2005 Grievance Committee findings were public knowledge and easily discoverable through simple internet searches and limited due diligence efforts.

37.     Indeed, pursuant to its internal policies and procedures, Christiana performed due diligence on individuals associated with the Trust, including Carpenter's wife, brother-in-law, and law partner.

38.     In performing its due diligence, Christiana recklessly disregarded, willfully ignored, or was derelict in acting upon the numerous red flags that should have dissuaded it from going into business with Carpenter.

**C.      Christiana Accepts Broad Responsibilities as Insurance Trustee**

39.      The Declaration of Trust sets forth a variety of duties and responsibilities of the Insurance Trustee and broadly established Christiana's absolute control over all relevant aspects of the Trust.

40.      Christiana (and later, WSFS) was responsible for "do[ing] any and all things and [executing] any and all such instruments as may be deemed necessary or proper to carry out the limited purposes of this Plan"—which purpose was "to provide certain life benefits and Death Benefits for specified Employees of participating Employers . . . for the exclusive benefit of the Participants, their dependents and, in the case of life benefits, their beneficiaries . . . ."  Decl. of Tr., at 1 & §§ 3.02, 12.01(a).

41.      WSFS/Christiana was to exercise its "sole and absolute discretion" to "compromise, settle or adjust any claim or demand by or against the Trust . . . with regard to . . . (2) any insurance policy that may be held hereunder, [and] (3) any proceeds of any insurance policy . . . ."  *Id.* § 12.01(a)(iii).

42.      To that end, WSFS/Christiana was granted "the right to exercise in its sole and absolute discretion and without the consent of any other party, all rights, powers and authority over and with respect to any insurance policy held hereunder and over and with respect to any proceeds of any insurance policy that shall be or shall have been held hereunder, including but not limited to . . . mak[ing] payment of proceeds of any insurance policies directly to any person or entity or its assigns for payment of all amounts due and owing under the . . . Trust or otherwise . . . ."  *Id.* § 12.01(d).

43.     Moreover, WSFS/Christiana was required to provide its written consent to virtually all administrative activities of Nova, as corporate trustee, including the payment of death benefits and disbursement of Trust funds.  *Id.* §§ 7.01, 10.05, 12.01(a)(i).

44.     Additionally, the Declaration of Trust limited Nova's authority and provided that Nova cede to WSFS/Christiana's authority in the operation of the Trust.    Absent WSFS/Christiana's express consent, Nova was prohibited from: (i) paying Trust expenses, *id.* §§ 1.04, 10.02; (ii) distributing life insurance policy proceeds, *id.* § 7.01; (iii) investing and managing Trust funds, including selling, pledging, mortgaging, or otherwise disposing of Trust assets, *id.* §§ 10.01, 10.02; (iv) borrowing and lending money, *id.* § 10.02; (v) receiving and disbursing Trust funds, *id.* § 10.05; and (vi) engage in litigation, *id.* § 10.02(i).

45.     Indeed, as Carpenter explained in open court in November 2013, "Christiana Bank is the insurance trustee so, effectively, nothing can be done; no funding could be done and no action could be taken in relation to the policies without the approval of Christiana Bank."

46.     Despite this, Christiana abandoned its fiduciary duties and failed to fulfill its obligations and responsibilities to Trust participants and beneficiaries.  Instead, Christiana ceded all decision-making authority to Carpenter, even as he was awaiting sentencing on 19 counts of fraud.  Rather than protecting Trust participants and beneficiaries, Christiana sat idly by and permitted and facilitated Carpenter's theft of Trust assets intended for Universitas.

47.     In fact, even as a New York federal court has found, and a federal grand jury has alleged, that Carpenter unlawfully looted the Trust and misappropriated Universitas' funds for his own benefit, WSFS/Christiana lurked in the shadows and has done nothing to fulfill its duties to Trust beneficiaries, including Universitas.

### D.       Carpenter Loots the Trust on Christiana's Watch

48.      In December 2006 and January 2007, Sash A. Spencer, then the CEO of Holding Capital Group, Inc., named Universitas the sole irrevocable beneficiary of Charter Oak Trust death benefit comprised of $30,000,000 in proceeds payable under two Lincoln National Life Insurance Company ("Lincoln Life") life insurance policies (less certain fees and expenses agreed to by Spencer and the Trust).

49.      Spencer died unexpectedly in June 2008.

50.      In May 2009, Lincoln Life tendered to the Trust the death benefits, plus interest—approximately $30,700,000.   The proceeds were delivered to Nova through Bursey, who deposited them into a TD Bank account in the name of Charter Oak Trust.

51.      The Trust subsequently refused to transfer the proceeds to Universitas, and ultimately denied Universitas' claim to the proceeds on fraudulent grounds, forcing Universitas to commence arbitration against the Trust in 2010 to attempt to recover its benefits.

52.      Throughout the arbitration, the Trust refused to disclose the identity of the Insurance Trustee and WSFS/Christiana never came forward.

53.      During the arbitration proceeding, Universitas learned that within five months of the receipt and deposit of the Lincoln Life funds—on Christiana's watch—Carpenter and Bursey transferred all of the money to bank accounts in the name of other shell entities controlled by Carpenter, who thereafter used the money for his own purposes, including to purchase a beachfront vacation home for more than $1,000,000.

54.      Universitas was awarded $26,558,308.36, the balance of the Lincoln Life proceeds less expenses, and costs incurred in pursuing recovery.  The award was confirmed by a

federal judge in 2012, and, with accrued interest (10% per annum), had grown to $30,181,880.30.

55.     The Trust refused to pay the award, necessitating extensive and costly judgment enforcement litigation which has, to date, been largely unsuccessful. Interest on the award continues to accrue.  Universitas has also been awarded approximately $1.5 million in costs and attorneys' fees.  Its costs and fees continue to accrue.

### E.     Christiana Looks the Other Way

56.     Christiana was obligated, but failed, to direct payment of the Lincoln Life funds to Universitas.  Christiana did nothing to ensure that the Lincoln Life funds would be used for the "exclusive benefit" of Trust beneficiary Universitas.  WSFS/Christiana failed to inform Universitas of the disposition of Universitas' funds—even after the Trust's offices were raided and WSFS/Christiana was subpoenaed in connection with a 2011 federal criminal investigation into the operation of the Trust.

57.     In fact, Christiana and the Trust endeavored to conceal WSFS/Christiana's very identity until WSFS/Christiana was forced to begrudgingly come forward in connection with judgment enforcement proceedings.

58.     As a direct result of Christiana's unwillingness, failure, and refusal to monitor Trust assets, as it was obligated to do, and its decision to cede control over the Trust to a convicted felon, Carpenter, with Bursey's help, and while awaiting sentencing on federal fraud charges, made off with more than $30,000,000 of Universitas' money without so much as thought from Christiana.

59.     WSFS/Christiana has since watched passively from the sidelines as Universitas has fought mightily to recover what was taken from it.

60.     All of this was avoidable and should not have occurred had WSFS/Christiana fulfilled its duties and obligations as Trustee.   Instead, Universitas has been victimized by WSFS/Christiana's misconduct and WSFS/Christiana has found itself under federal investigation for its wrongdoing with respect to Trust participants and affiliates.

### F.     More Trouble for Carpenter and his Complicit Business Partners

61.     In December 2013, Carpenter and Bursey were indicted by a Connecticut federal grand jury on 33 counts of mail and wire fraud, in connection with the fraudulent origination of certain life insurance policies (though not the Spencer policies) procured through the Charter Oak Trust.

62.     Upon information and belief, WSFS/Christiana is the "Delaware bank" identified in the indictment as complicit in Carpenter's wrongdoing.

63.     In May 2014, a superseding indictment was released in the same criminal action, charging Carpenter and Bursey with 24 additional counts relating to their misappropriation of Universitas' money.

## V.     Causes of Action

### A.     First Claim for Relief:  Breach of Fiduciary Duty

64.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

65.     Christiana, as a Trustee of the Charter Oak Trust, and WSFS, as successor-in-interest to Christiana, had fiduciary duties to Universitas based in the common law and as set forth the Declaration of Trust.  Central to those was WSFS/Universitas' obligation to safeguard and properly distribute Trust assets to Trust beneficiaries.

66.     WSFS/Christiana breached its fiduciary duties and violated applicable standards of care by, *inter alia*, failing to control, track, and ensure payment of Trust funds to Universitas as required by the Declaration of Trust and related enrollment documents.   Instead, WSFS/Universitas permitted the looting of the Trust by a convicted felon and remained hidden while Universitas undertook extensive efforts to locate and recover its benefits.

67.     WSFS/Christiana's misconduct was willful and in bad faith, and in reckless disregard of Universitas' status and rights as a beneficiary of the Charter Oak Trust.

68.     As a direct and proximate result of WSFS/Christiana's willful breaches of its fiduciary duties, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds.

**C.     Second Claim for Relief:  Aiding & Abetting Breach of Fiduciary Duty**

69.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

70.     Nova, as corporate trustee, had fiduciary duties to Universitas based in the common law and as set forth the Declaration of Trust.  Central to those was  Nova's obligation to safeguard and properly distribute Trust assets to Trust beneficiaries.

71.     Nova breached its fiduciary duties and violated applicable standards of care by, *inter alia*, failing to control, track, and ensure payment of Trust funds to Universitas as required by the Declaration of Trust and related enrollment documents.  WSFS/Universitas knowingly participated in the breaches and permitted the looting of the Trust by a convicted felon..

72.     WSFS/Christiana's misconduct was willful and in bad faith, and in reckless disregard of Universitas' status and rights as a beneficiary of the Charter Oak Trust.

73.     As a direct and proximate result of WSFS/Christiana's participation, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds

**C.      Third Claim for Relief:  Negligence**

74.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

75.     Christiana, as a Trustee of the Charter Oak Trust, and WSFS, as successor-in-interest to Christiana, owed a common law duty of care to Universitas to protect Universitas' interests as a Trust beneficiary and to guard against possible breaches of trust by fellow trustees.

76.     WSFS/Christiana breached its duties and violated applicable standards of care by, *inter alia*, failing to control, track, and ensure payment of Trust funds to Universitas. WSFS/Christiana further breached its duties and violated applicable standards of care by permitting and assisting the looting of the Trust of more than $30 million by the corporate trustee and Carpenter.

77.     WSFS/Christiana's misconduct was willful and in bad faith, and in reckless disregard of Universitas' status and rights as a beneficiary of the Charter Oak Trust.

78.     As a direct and proximate result of Christiana's negligent, grossly negligent, and/or reckless conduct, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds.

**D.      Fourth Claim for Relief:  Aiding & Abetting Fraud**

79.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

80.     In misappropriating the Spencer policy proceeds, Carpenter and his associates, including Bursey, committed an unlawful act that injured Universitas.

81.     Despite purporting to have been established for the exclusive benefit of Trust participants and beneficiaries, the Trust has never benefitted anyone except Carpenter and his associates.

82.     Christiana was aware of the true, undisclosed nature of the Trust and substantially assisted Carpenter and his associates in perpetuating its bogus aims by, *inter alia*, failing and refusing to control, track, and ensure payment of Trust funds to Universitas.

83.     WSFS/Christiana's misconduct was willful and in bad faith, and in reckless disregard of Universitas' status and rights as a beneficiary of the Charter Oak Trust.

84.     As a direct and proximate result of Christiana's wrongful assistance, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds.

**E.      Fifth Claim for Relief:  Theft**

85.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

86.     Universitas, as the Trust beneficiary of the Spencer policy proceeds, is the owner of the funds.

87.     WSFS/Christiana had legal authority over the Spencer policy proceeds.  Rather than deliver those proceeds to Universitas, WSFS/Christiana wrongfully took, obtained, or withheld the proceeds with the intent to deprive Universitas of them.   In so doing, WSFS/Christiana committed statutory theft under Connecticut General Statute § 52-564.

88.     As a direct and proximate result of Christiana's wrongful assistance, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds.

89.     Pursuant to Connecticut General Statute § 52-564, Universitas is entitled to treble damages.

**F.      Sixth Claim for Relief:  Aiding and Abetting Theft**

90.     Universitas repeats and re-alleges the allegations set forth in paragraphs 1 through 63 of this Notice and Statement as if fully set forth herein.

91.     Universitas, as the Trust beneficiary of the Spencer policy proceeds, is the owner of the funds.

92.     Carpenter and/or his associates, took, obtained, or withheld the proceeds and/or appropriated them to themselves, with the intent to deprive Universitas of them.

93.     Despite purporting to have been established for the exclusive benefit of Trust participants and beneficiaries, the Trust has never benefitted anyone except Carpenter and his associates.

94.     Christiana was aware of the true, undisclosed nature of the Trust and substantially assisted Carpenter and his associates in taking or withholding the Spencer policy proceeds by, *inter alia*, failing and refusing to control, track, and ensure payment of Trust funds to Universitas.

95.     As a direct and proximate result of Christiana's wrongful assistance, Universitas has suffered damages in excess of $30,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds.  In

so doing, WSFS/Christiana aided and abetted statutory theft under Connecticut General Statute § 52-564.

96.     Pursuant to Connecticut General Statute § 52-564, Universitas is entitled to treble damages.

## PRAYER FOR RELIEF

WHEREFORE, Claimant Universitas Education LLC respectfully demands a finding that Defendant Wilmington Savings Fund Society, FSB, as successor-in-interest to Christiana Bank and Trust Company breached its fiduciary and common law duties to Universitas, aided and abetted breaches of fiduciary duties and fraud against Universitas, and stole funds belonging to Universitas, and that Universitas be awarded:

A.     Compensatory damages of at least $35,000,000, consisting of the value of the Spencer policy proceeds, interest on those proceeds, and costs incurred in seeking recovery of the proceeds;

B.     Exemplary or punitive damages;

C.     Treble damages;

D.     Disgorgement of all fees WSFS/Christiana collected in connection with the Charter Oak Trust;

E.     Attorneys' fees and costs;

F.     Prejudgment interest; and

G.     Such other and further relief as the tribunal deems just and proper.

//

//

//

Dated: April 6, 2015   Respectfully submitted,

         STURM LAW, PLLC


         */s/ Shannon A. Lang*
         Charles A. Sturm
         csturm@sturmlegal.com
         Shannon A. Lang
         slang@sturmlegal.com
         723 Main Street, Suite 330
         Houston, Texas  77002
         (713) 955-1800 tel.
         (713) 955-1078 fax

         *Attorneys for Claimant Universitas Education LLC*

# EXHIBIT  A2

## Business Inquiry

 **HOME**     **HELP**

### Business Details

| | | | |
|---|---|---|---|
| Business Name: | **RIDGEWOOD FINANCE II LLC** | Citizenship/State Inc: | **Foreign/DE** |
| Business ID: | **0990216** | Last Report Filed Year: | **2011** |
| Business Address: | **1055 WASHINGTON BLVD., 8TH FLOOR, STAMFORD, CT, 06901** | Business Type: | **Foreign Limited Liability Company** |
| Mailing Address: | **1055 WASHINGTON BLVD., 8TH FLOOR, STAMFORD, CT, 06901** | Business Status: | **Active** |
| Date Inc/Registration: | **Dec 09, 2009** | | |
| Commence Business Date: | **Dec 04, 2009** | | |

### Principals Details

| Name/Title | Business Address | Residence Address |
|---|---|---|
| CALDWELL LIFE STRATEGIES CORPORATION MEMBER | 1055 WASHINGTON BLVD., 8TH FLOOR, STAMFORD, CT, 06901 | 1055 WASHINGTON BLVD., 8TH FLOOR, STAMFORD, CT, 06901 |

### Agent Summary

| | |
|---|---|
| Agent Name | **CORPORATION SERVICE COMPANY** |
| Agent Business Address | **50 WESTON STREET, HARTFORD, CT, 06120-1537** |
| Agent Residence Address | **NONE** |

**OTHER ADDRESSES:**

Back      View Filing History      View Name History      View Shares