IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor-in-interest to CHRISTIANA BANK & TRUST COMPANY, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO: 3:15-CV-00911-VLB |
| UNIVERSITAS EDUCATION, LLC, and RIDGEWOOD FINANCE II, LLC, as successor-in-interest to RIDGEWOOD FINANCE, INC., | § § § § § § | |
| *Defendants.* | § | July 24, 2015 |

### MEMORANDUM IN SUPPORT OF UNIVERSITAS EDUCATION, LLC'S MOTION TO STAY LITIGATION AND COMPEL ARBITRATION

Defendant Universitas Education, LLC ("Universitas") asks that the Court stay this case and compel Plaintiff Wilmington Savings Fund Society, FSB ("WSFS", as successor-in-interest to Christiana Bank & Trust Company ("Christiana" and, collectively, "WSFS/Christiana"), to participate in the arbitration proceeding currently pending before the American Arbitration Association ("AAA") in New York.

WSFS/Christiana agreed to arbitrate Universitas' claims when it accepted an appointment as Trustee of the Charter Oak Trust (the "Trust") and consented to all provisions of the Declaration of Trust—including its arbitration provisions. Contrary to WSFS/Christiana's specious suggestions in its Complaint, that there are two versions of the Declaration of Trust is of no consequence. The versions are identical in all respects except for the identity of the Plan Sponsor, which

could be easily changed under the terms of the Trust instrument—a fact WSFS/Christiana has readily acknowledged. Regardless, there is only one Charter Oak Trust. Christiana (and later, WSFS) provided services to that Trust (and accepted payment for those services from that Trust) for years, including in connection with the life insurance policies giving rise the Universitas arbitration. Moreover, as both versions of the Declaration of Trust contain identical arbitration provisions, there can be no dispute that WSFS/Christiana agreed to these provisions. Thus, in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and applicable case law, Universitas' Motion to Stay and Compel should be granted.

I.    **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

   A.    *The Charter Oak Trust.*

Beginning in or around late 2006, the "Charter Oak Trust Welfare Benefit Plan" marketed and represented itself to be a multiple-employer welfare benefit plan operating under Sections 419 and 419A of the Internal Revenue Code. (*See* Exh. C: Notice of Arbitration, ¶ 20.) The Trust purported to offer small and medium-sized businesses the opportunity to provide life insurance benefits for their executives that carried various tax benefits for the participating employers. (*Id.*) The Trust was conceived and operated by Daniel Carpenter, a disgraced former Connecticut attorney and convicted felon who, unbeknownst to Universitas, operated dozens of businesses of (at best) questionable legitimacy. (*Id.* ¶ 25.)

As required under applicable federal law, the Trust was to own and be the

named beneficiary on life insurance policies purchased by participating employers on the lives of covered employees who would, in turn, identify a beneficiary of their Trust benefits. (*Id.* ¶ 21.) Upon the employee's death, life insurance proceeds would be paid to the Trust, which was then to pass on the proceeds to the employee's beneficiary, less certain identified expenses. (*Id.*) The Declaration of Trust expressly reflects this, stating that the Trust was established "for the exclusive benefit of the Participants, their dependents and, in the case of life benefits, their beneficiaries . . . ." (*Id.* ¶ 22)

The Declaration of Trust required the appointment of two trustees. (*Id.* ¶ 23.) The first trustee was the Plan Sponsor (which also acted as the "Named Trustee" and "Named Fiduciary"). (*Id.* ¶ 24.) The second, an "Insurance Trustee," was to be a "nationally known trust company or a bank trust department acceptable to and appointed by a third-party with an interest in the []Trust with the consent of the Plan Sponsor." (*Id.* ¶ 27.) The "third party with an interest in the [] Trust" was Ridgewood Finance, Inc. ("Ridgewood"), a private equity firm that had agreed to provide the Trust, through a Carpenter-controlled entity called Grist Mill Capital, LLC ("Grist Mill"), with $35,000,000 in financing to procure and pay for life insurance policies issued on Trust participants. (*Id.* ¶ 28.)

B. <u>Nova Group is Named Plan Sponsor.</u>

As originally conceived, the Plan Sponsor of the Trust was to be Grist Mill. However, shortly after the Trust commenced operations, another Carpenter entity, Nova Group, Inc. ("Nova"), was named Plan Sponsor instead.

In sworn testimony during an arbitration proceeding concerning Nova's

3

misconduct in connection with the Universitas Trust benefits, Jack Robinson, Nova's General Counsel, explained the change. Robinson testified that he first created the Declaration of Trust in September or October of 2006 with the assistance of Elliott Kroll, a lawyer for Ridgewood. (*See* Exh. D: Dep. of Jack Robinson, at 467:24–468:2; 499:9–17; 561:9–14.) During the drafting process, at least two versions of the same Declaration of Trust were ultimately created and signed. The first version named Grist Mill as the Plan Sponsor. (*See* Exh. E: Decl. of Trust (v.1).) The second and operative version, however, named Nova as the Plan Sponsor. (*See* Exh. F: Decl. of Trust (operative).) The two versions of the Declaration of Trust have the same effective date, October 1, 2006, and are identical, word-for-word, in every other respect. (*Compare* Exh. E. *with* Exh. F.)

The decision to ultimately name Nova Plan Sponsor was made upon the advice of Ridgewood's legal counsel. Specifically, Mr. Robinson testified that Nova was told that it was "not a good idea" for Grist Mill to be the Plan Sponsor:

> Q. Now, you testified that, in the October, November, December time frame, changes were being made to the trust instrument, correct?
>
> A. To the trust instrument and all of the client documents, yes.
>
> Q. What were these changes that were being made?
>
> A. Several. First is the – in one of the first early drafts, <u>the sponsor of the plan was Grist Mill Capital</u>, which as soon as that – very shortly after that draft was circulated – excuse me – we were advised, I think, by Elliott Kroll, actually, that it was not a good idea to have the entity that is funding the premiums also be the plan fiduciary. So we immediately changed. That was the first big one that I remember. <u>We immediately changed out Grist Mill Capital as the plan sponsor and put in Nova Group, Inc.</u>

4

(Exh. D, at 522:8–523:5 (emphases added)).)

Although the version of the Trust instrument identifying Grist Mill as the Plan Sponsor was acknowledged as an "early draft," because drafts were "flying around" in the "hectic" days during which Trust operations were being established, and because Ridgewood required "an executed document" before it would release funds to Grist Mill and the Trust, both drafts and the final version of the Declaration of Trust naming Nova as Plan Sponsor were signed. (*Id.*, at 517:13–518:24, 527:10–528:14; *see also id.*, at 500:25–504:16.) Indeed, Ridgewood, which was closely involved in drafting the "Grist Mill" draft acknowledged that it was not final. (*Id.*, at 530:8–531:20.)

  C. <u>*Christiana is Appointed Insurance Trustee.*</u>

While the Declaration of Trust was being finalized, Ridgewood, as the "third party with an interest in the Plan and Trust," appointed, with Plan Sponsor Nova's approval, Christiana as the Insurance Trustee of the Trust via the execution of an "Appointment Agreement" dated December 12, 2006.[1] (*See* Exh. G: Appointment Agreement.)

In the Appointment Agreement, Ridgewood and Christiana agreed that:

> Pursuant to Section 2.13 of the Declaration of Trust, dated as of October 1, 2006 (as amended from time to time, the "Declaration of Trust"), entered into by Grist Mill Capital, LLC, as Plan Sponsor (the "Plan Sponsor") establishing the Charter Oak Trust, a Connecticut nonstatutory trust (the "Trust"), in connection with the Charter Oak Trust Welfare Benefit Plan (the "Plan," together with the Trust, collectively as the "Plan & Trust"), the Company [Ridgewood], as the "third party with an interest in the Plan & Trust referenced in such Section 2.13, (i) has determined that CB&T [Christiana] is acceptable to the Company to be appointed under Section 2.13 as the Insurance Trustee and (ii) hereby appoints CB&T as the Insurance Trustee (as

---

[1] Christiana was later succeeded by WSFS.

5

> defined in the Declaration of Trust, CB&T in such capacity herein referred to as the "Insurance Trustee") under the Declaration of Trust. CB&T hereby accepts its appointment as Insurance Trustee hereunder and agrees to perform its duties as Insurance Trustee under the Declaration of Trust.

(*Id.*)

Although the Appointment Agreement references Grist Mill as the Plan Sponsor of the Trust, as set forth above, Grist Mill was only the initial proposed Plan Sponsor of the Trust. In any event, the Appointment Agreement expressly acknowledges that the Declaration of Trust under which Christiana (and later, WSFS) was agreeing to act could be "amended from time to time." (*Id.*) The Declaration of Trust in turn provides that the Plan Sponsor can unilaterally appoint a successor without notice or approval of the Insurance Trustee or the "third party with an interest in the [] Trust." (*See* Exh. E, § 2.20; Exh. F, § 2.20.) Indeed, Jack Robinson, the General Counsel of <u>Nova</u>, signed the Appointment Agreement on behalf of Grist Mill (*see* Exh. G); it was Nova that ultimately approved Christiana's appointment as Insurance Trustee (*see* Exh. D, at 493:21–494:5); and Christiana subsequently communicated with Robinson and other Nova employees in connection with its duties as Insurance Trustee (*id.*, at 497:21–498:13).

Within a week of its appointment as Insurance Trustee, Robinson requested that Christiana open a trust account in the name of the Charter Oak Trust and provided the Trust's "Taxpayer Identification Number." (*See* Exh. H: Request.) The next day, Christiana created account number CH125161-0 in the

6

name of the Charter Oak Trust.[2]  (*See* Exh. I: New Account Set Up Form.)

      D.    *Sash Spencer Joins the Trust under Christiana's Watch and Names Universitas a Trust Beneficiary.*

In December 2006 and January 2007, Sash A. Spencer, a New York financier, joined the Trust through his company, Holding Capital Group, Inc., and named Universitas the sole irrevocable beneficiary of a Trust death benefit comprised of $30,000,000 in life insurance proceeds payable under two life insurance policies issued by Lincoln National Life Insurance Company ("Lincoln Life"). (Exh. A, ¶ 48.)

WSFS/Christiana's own records reflect its role in handling and managing the Spencer assets. Its files contain a "Charter Oak Trust Trustee's Certificate," "CH125161-0," dated January 12, 2007, and signed by Charter Oak Trustee, Nova President, Wayne Bursey, certifying that the "Death Benefits on the insured life of Trust participant Sash Spencer is duly authorized." (*See* Ex. J: Trustee's Certificate; *see also* Exh. F: Declaration of Trust (executed by Wayne Bursey, President, Nova Group, Inc.).) Christiana subsequently issued a "Trust Vault Receipt" indicating that a trust "asset," identified as a "Lincoln Life Ins. Pol." In the name of "S. Spencer" had been placed into the company vault for the "Charter Oak Trust" account, Number CH125161-0. (Exh. K: Trust Vault Receipt.)

---

[2] Moreover, if there remained any doubt about the identity of the Plan Sponsor, such doubt plainly had no impact on WSFS/Christiana's day-to-day management of the Trust (undoubtedly because the Plan Sponsor could be changed on a whim under either version of the Declaration of Trust). Nor did such doubt in any way suggest that there existed multiple "Charter Oak Trusts." This is reflected in an email from a Christiana executive, sent in connection with the wind-down of Trust operations in April 2011. In it, the executive notes that Grist Mill appeared to be the initial Plan Sponsor of the Trust and inquires as to the identity of the then-current Plan Sponsor, to ensure proper authorization for WSFS/Christiana to close the Charter Oak Trust Account (No. CH125161-0). (Exh. O: Email Exchange (April 19, 2011).)

7

The Spencer policies were reflected on Christiana account statements for Account CH125161-0, prepared by "Christiana Bank and Trust Company, Trustee for Charter Oak Trust," and directed to Amanda Rossi, then Nova's corporate secretary. (Exh. L: Account Statement; Exh. M: Secretary of State Filing.) Email correspondence concerning Trust operations were sent by Christiana to "Nova." (*See, e.g.*, Exh. N: Email Exchange.)

Spencer died unexpectedly in June 2008. Lincoln Life subsequently tendered to the Trust the death benefits, plus interest—approximately $30,700,000—which was deposited into a bank account in the name of the Trust. (Exh. A, ¶ 50.) Rather than tendering the benefits to Universitas, the Trust, on Christiana's watch, permitted the Trust assets to be looted and stolen by Carpenter and Bursey. (*Id.* ¶¶ 5, 51.)

      E.    <u>*Universitas Commences Arbitration.*</u>

Because both versions of the Declaration of Trust at issue are identical with the exception of the name of the Plan Sponsor, both contain the same arbitration provisions. Specifically, section 8.02(d) mandates that "<u>any and all other disputes, claims or controversies (whether or not related to benefits) arising under this Plan & Trust shall be settled by binding arbitration</u> before a single arbitrator in New York, New York, under the commercial arbitration rules of the American Arbitration Association." (*See* Exh E, § 8.02(d); Exh. F, § 8.02 (emphasis added).) Section 13.07 similarly provides that "[a]ny and all disputes regarding the Trust or the Plan shall be settled by Arbitration." (Exh. E, § 13.07; Exh. F, § 13.07.)

Accordingly, on April 6, 2015, Universitas commenced arbitration proceedings in the AAA against WSFS/Christiana. In its Notice of Arbitration, Universitas alleged that WSFS/Christiana allowed the Sash Spencer Trust assets to be stolen from Universitas and further alleged that the arbitration provisions in the Trust Declaration mandated that its claims be arbitrated. (*See generally* Exh. A, ¶¶ 1–19.) In support of its Notice, Universitas attached both the Appointment Agreement as well as the operative version of the Trust Declaration naming Nova as the Plan Sponsor.

In response, on May 14, 2015, WSFS/Christiana sued Universitas and Ridgewood in the Superior Court of Connecticut.[3] WSFS/Christiana alleges in its state court lawsuit that because the Appointment Agreement identifies Grist Mill as the Plan Sponsor of the Trust, but the Trust Declaration attached to the Notice of Arbitration identifies Nova as the Plan Sponsor, the arbitration provisions in that Trust Declaration do not apply to it. (*See* Compl. (Dkt. # 1-2, ¶¶ 12–14.) Based on this absurd "I gotcha" argument, WSFS/Christiana denies its role in administering the Sash Spencer insurance proceeds—despite that documents in its possession confirm that it did. More incredibly, WSFS/Christiana surmises, without any evidence, that there really must be <u>two</u> Charter Oak Trusts, both apparently with the same effective date, the same name, the same federal tax identification number, the same internal Christiana account number, and created

---

[3] Although it sued Ridgewood, WSFS/Christiana alleges no facts specific to Ridgewood and asserts no causes of action against it, plainly suggesting that Ridgewood was added to the suit in a flawed attempt by WSFS/Christiana to avoid federal court jurisdiction. (*See, e.g.*, Notice of Removal (Dkt. # 1.))

by identical trust declarations, but with different plan sponsors.[4]   (*See id.* ¶ 12.)

Universitas subsequently removed the case to this Court.

## II.   STANDARD OF LAW

The Federal Arbitration Act ("FAA"), which applies to all contracts affecting interstate and international commerce, provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitrate on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law,

---

[4] WSFS/Christiana's professed confusion about whether it was the Insurance Trustee for the Charter Oak Trust for which Nova Group acted as Plan Sponsor is belied not only by its own documents referenced in this pleading, but also by the way in which those documents were given to Universitas.  WSFS/Christiana provided these documents in response to subpoenas *duces tecum* issued by Universitas that asked for documents relating to the Charter Oak Trust with <u>Nova Group as the Plan Sponsor</u>—including "[d]ocuments sufficient to show WSFS/Christiana Trust's appointment as Insurance Trustee of the Charter Oak Trust," defined as "<u>the</u> Charter Oak Trust Welfare Benefit Plan." (*See* Exh. P: Subpoenas.)  WSFS/Christiana responded to the subpoenas without objection or inquiry into the identity of the trust at issue.  It is unclear why WSFS/Christiana is purportedly baffled now when presented with a demand for arbitration stemming from its role with "<u>the</u> Charter Oak Trust," but was not similarly confused when it responded to document requests bearing on its exact same role with <u>the</u> exact same trust.  It is equally unclear how and way WSFS/Christiana could possibly deny that the Sash Spencer proceeds were administered as part of the same trust.

Should the Court wish to unravel this evident mystery—why WSFS/Christiana would file a pleading asserting facts that are contradicted by documents in its own possession and whether such a pleading was filed for an improper purpose—it is certainly authorized to do so.  *See* Fed. R. Civ. P. 11 (c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).").

any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

"Pursuant to the FAA, the role of courts is limited to determining two issues: (i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks omitted). Here, it is undisputed that WSFS refuses to arbitrate: it has filed a suit seeking a declaration that it is not obligated to do so. Thus, the sole issue to be decided by the Court is whether a valid agreement to arbitrate exists.

In making this determination, the Court is to "apply a standard similar to that applicable to a motion for summary judgment." Accordingly, in the face of evidentiary facts presented by a party seeking to compel arbitration, a party resisting arbitration may not rest on a mere denial, but must submit evidentiary facts disputing the existence of an agreement. *Pomposi v. Gamestop, Inc.*, No. 3:09-CV-340 (VLB), 2010 U.S. Dist. LEXIS 1819, at **8–9 (D. Conn. Jan. 11, 2010) (quoting *DuBois v. Macy's East Inc.*, 338 F. App.x 32 (2d Cir. July 9, 2009) (internal citations omitted)). WSFS/Christiana cannot meet this burden.

### III. ARGUMENT & AUTHORITIES

#### A. Christiana Cannot—and Does Not—Dispute that it Agreed to Arbitrate Disputes "Arising Under" the Charter Oak Trust.

Although it now professes to be ignorant of the circumstances surrounding the formation of the Trust documents, even WSFS concedes that it would be

compelled to arbitrate Universitas' claims if only Universitas had attached to its Notice of Arbitration the version of the Declaration of Trust naming Grist Mill as the Plan Sponsor, rather than the version identifying Nova.  (*See* Compl. (Dkt. # 1-2), ¶¶ 12–14.)  The flaws in WSFS/Christiana's position are manifest.  As set forth above, the trust referenced in the "Grist Mill" version of the Trust instrument and that of the "Nova" version is the same trust.  The identity of the Plan Sponsor is of no consequence, especially as the Declarations of Trust provide that the Plan Sponsor can be changed at its sole discretion.  In any event, Universitas now submits that document, which unquestionably requires that WSFS/Christiana submit to arbitration of Universitas' claims.  (*See* Exh. E.)

There is no genuine issue of fact that WSFS/Christiana performed its duties as Insurance Trustee under the "Grist Mill" version of the Declaration of Trust and that the Declaration contains a broad arbitration provision extending to "any and all . . . disputes, claims or controversies (whether or not related to benefits) arising under the [Trust]."  (*Id.* § 8.02(d)).  There is no genuine issue of fact that Christiana acknowledged the Spencer policies as Trust assets, held in its vault and reflected on Trust account statements identifying WSFS/Christiana as "Trustee."  (*See* Exh. K; Exh. L.)  There is no question that Universitas' claims, which are directed to WSFS/Christiana's failure to fulfill its duties as Trustee and ensure proper payment of Trust proceeds "arises under" the Trust.[5]  Finally, there

---

[5] Even if there were such a question, the Declaration of Trust adopts the Commercial Arbitration Rules of the AAA which, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or controversy."  (*See* AAA Commercial Arbitration Rules (Oct. 1, 2013), at R-7, *available at* www.adr.org.)  Because the parties have agreed to arbitrate

is no evidence, as WSFS/Christiana now implausibly contends, that there are two "Charter Oak Trusts," each with the same effective date, the same name, the same federal tax identification number, the same internal Christiana account number, created by identical trust instruments, and each somehow accepted the Spencer policies as Trust assets. Accordingly, as there unquestionably exists a valid agreement to arbitrate, WSFS must be compelled to do so. *See Byrd*, 470 U.S. at 218.

### B. This Case Should be Stayed.

Section 3 of the FAA mandates that "[t]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Courts in this Circuit have concluded that a stay is far preferable to dismissal of an action, which can enable an intransigent party to stymie and delay arbitration further by forcing the case through the appellate process which undermines the "strong public policy against interfering with the rights of parties to enter into contracts and favoring consensual dispute resolution." *Dunne v. Doyle*, No. 3:13-CV-1075 (VLB), 2014 U.S. Dist. LEXIS 102391, at **10–12 (D. Conn. July 28, 2014) (citing *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1997)); *see, e.g., Pick Quick Food, Inc. v. United Food & Commercial Workers Local 342*, 952 F. Supp. 2d 494, 506 (E.D.N.Y. 2013) (because a stay is an unappealable interlocutory order under the FAA, a stay is

---

arbitrability, any question whether Universitas' claims "arise under" the Declaration of Trust must be resolved in arbitration. *See, e.g., Sidell v. Structured Settlement Invs.*, No. 3:08-CV-710 (VLB), 2009 U.S. Dist. LEXIS 2244, at **5–7 (D. Conn. Jan. 14, 2009).

13

"more likely to allow the matter to proceed to arbitration in an expeditious manner." (citations omitted)).  Thus, the Second Circuit had found that a "court has a <u>duty</u> to stay its proceedings if it is satisfied that the issue before it is arbitrable . . . ."  *Dunne*, 2014 U.S. Dist. LEXIS 102391, at *11 (quoting *Fuller*, 565 F.2d at 261).

Accordingly, as the unambiguous terms of the Declaration of Trust require that Universitas' claims be arbitrated, and especially given the frivolousness of WSFS/Christiana's claims to the contrary, Universitas respectfully requests that the Court stay this litigation and compel arbitration.

## IV.     CONCLUSION

WSFS/Christiana's fantastical allegation that there are two "Charter Oak Trusts" is just that—fantasy.  So is the allegation that WSFS/Christiana did not administer the Sash Spencer insurance policies, which is plainly undermined by its own documents.  WSFS/Universitas' claims are an obvious attempt to delay resolution of Universitas' claims and unnecessarily burden the parties and the Court.  The Court should not countenance WSFS/Christiana's prevarication and should stay this case and compel WSFS/Christiana to participate in the Universitas arbitration.

//

//

//

Respectfully submitted,

**FEINER WOLFSON LLC**


*/s/ John M. Wolfson*
**John M. Wolfson**
**Federal Bar No. ct03538**
**jwolfson@feinerwolfson.com**
**Benjamin M. Wattenmaker**
**Federal Bar No. ct26923**
**bwattenmaker@feinerwolfson.com**
**One Constitution Plaza, Suite 900**
**Hartford, Connecticut  06103**
**(860) 713-8900 tel.**
**(860) 713-8905 fax**

**Shannon A. Lang***
**slang@sturmlegal.com**
**STURM LAW, PLLC**
**723 Main Street, Suite 330**
**Houston, Texas  77002**
**(713) 955-1800 tel.**
**(713) 955-1078 fax**

**\* Application for Admission Pending**

*Attorneys for Defendant*
*Universitas Education LLC*

## CERTIFICATE OF SERVICE

I certify that on July 24, 2015, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system, which should have generated electronic notification to all counsel of record:

David T. Martin
dmartin@cl-law.com
CUMMINGS & LOCKWOOD, LLC
Six Landmark Square
Stamford, Connecticut  06901
(203) 327-1700 tel.
(203) 708-3865 fax

*Attorney for Plaintiff Wilmington Savings Fund Society, FSB, as successor-in-interest to Christiana Bank & Trust Company*

Scott M. Harrington
sharrington@dmoc.com
DISERIO, MARTIN, O'CONNOR & CASTIGLIONI, LLP
One Atlantic Street
Stamford, Connecticut  06901
(203) 358-0800 tel.

*Counsel for Ridgewood Finance II, as successor-in-interest to Ridgewood Finance, Inc.*

/s/ *John M. Wolfson*
John M. Wolfson