## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor-in-interest to Christiana Bank & Trust Company,** | : : : : | |
| **Plaintiff,** | : : | **CIVIL CASE NUMBER:** |
| **v.** | : : | **3:15-cv-911 (VLB)** |
| **UNIVERSITAS EDUCATION, LLC, and RIDGEWOOD FINANCE II, LLC, as successor-in-interest to Ridgewood Finance, Inc.** | : : : : : | **February 17, 2016** |
| **Defendants.** | : | |

### MEMORANDUM OF DECISION

This action involves the arbitrability of a dispute between a beneficiary and alleged trustee of an insurance policy issued pursuant to a Multiple Employer Welfare Arrangement ("MEWA").  This action also raises three thorny issues of civil procedure.   The first procedural issue is whether the action must be remanded to state court because the diverse defendant removed it here on diversity grounds and alleged that the non-diverse defendant was fraudulently joined.  The second procedural issue is whether the plaintiff should be allowed to amend its complaint after removal to assert new claims against the non-diverse defendant if the Court rules that the non-diverse defendant was fraudulently joined.  The final procedural issue is whether this case should be stayed if the Court rules that the plaintiff and diverse defendant agreed to arbitrate.

The details surrounding the formation of the MEWA are not entirely clear, but the facts are sufficiently clear to permit this Court to resolve all issues presented.  The MEWA at issue, Charter Oak Trust ("COT"), held itself out as a vehicle for employers to obtain life insurance coverage for their employees. Plaintiff Wilmington Savings Fund Society, FSB, as successor-in-interest to Christiana Bank & Trust Company ("Wilmington"), served as the insurance trustee for a MEWA named Charter Oak Trust.  A participating employer in COT obtained two life insurance policies for its chief executive officer, and that executive designated Defendant Universitas Education, LLC ("Universitas") as the beneficiary of both policies.  At least one of the policies was deposited in a trust account opened by Wilmington, and Wilmington monitored both policies. The executive passed away, and the insurance company paid the death benefits to COT, which rebuffed Universitas's demand for payment of the benefits. Universitas later sought arbitration with Wilmington, alleging that it acted improperly as COT's insurance trustee.

Soon thereafter, in Connecticut Superior Court, Wilmington sought a declaratory judgment ruling that it was not obligated to arbitrate Universitas's claims because Wilmington was not a party to the declaration of trust containing the arbitration agreement referenced in the arbitration demand. Wilmington alleged that it served as the insurance trustee for a different trust, also named Charter Oak Trust but sponsored by a different entity.  Wilmington contends that it was not responsible for administering the insurance policies claimed by

2

Universitas and not a proper party to the arbitration proceeding initiated by Universitas.   The complaint names Universitas, a diverse defendant, and Defendant Ridgewood Finance II, LLC, as successor-in-interest to Ridgewood Finance, Inc. ("Ridgewood"), a non-diverse party who, according to Universitas's arbitration demand, appointed Wilmington to serve as COT's insurance trustee. Universitas removed the action to this Court on the basis of diversity jurisdiction, and Wilmington moves to remand the action back to state court on the basis that Ridgewood's presence deprives this Court of diversity jurisdiction.

 The first issue—whether the action must be remanded to state court— turns on whether there is any possibility, based on the state court pleadings, that Wilmington can state a cause of action against Ridgewood.   As explained in greater detail below, no possibility exists because Ridgewood is not a permissive, necessary, or indispensible party to the arbitrability dispute and the allegations in the state court complaint do not suggest a separate, yet related, declaratory judgment against Ridgewood.

Wilmington sought to amend its complaint after Universitas removed the action here, and the proposed amendment also seeks a declaratory judgment declaring Wilmington's rights and obligations arising from its appointment agreement with Ridgewood.  The second issue—whether Wilmington should be allowed to amend—turns on whether amendment would be fundamentally fair.   It would not.  The allegations in the amended complaint still do not suggest a separate, yet related, declaratory judgment against Ridgewood because the only

3

legal dispute between the two parties vis–à–vis the appointment agreement concerns indemnification and the amended complaint does not raise that dispute. Notably, that dispute is currently being litigated in a separate state-court action. Even assuming that the amended complaint had properly sought a declaratory judgment against Ridgewood, permitting Wilmington to circumvent fraudulent joinder has no equitable justification.

The final two issues concern Universitas's motion to compel arbitration and stay litigation.   Whether the dispute is arbitrable turns on whether Wilmington and Universitas agreed to arbitrate the payment of the disputed life insurance benefits.  The undisputed evidence demonstrates that, even assuming that there were two trusts named COT, Wilmington agreed to arbitrate any and all disputes relating to the COT holding the insurance policies claimed by Universitas.  Whether this action should be stayed pending arbitration turns on whether any or all claims in this action have been referred to arbitration.  None have.  This action raises only a judicial dispute—that is, arbitrability.  In other words, a stay should be denied because the proceeding is "independent" rather than "embedded."

## Factual and Procedural Background

In April 2015, Universitas brought an arbitration demand against Wilmington.  ECF No. 1-1.  The arbitration demand contains the following allegations.  Daniel Carpenter, currently being prosecuted in connection with activities related to this litigation, concocted a financial conspiracy involving a

MEWA named COT.  *Id.* at ¶¶ 20, 25, 61.  COT held itself out as exclusively designed to provide life insurance benefits to participating employer's employees for the benefit of those employees, their dependents, and their beneficiaries.  *Id.* at ¶ 22.  COT would own and be named as beneficiary of the life insurance policies, but it would pay death benefits to a beneficiary selected by the insured employee ("insurance beneficiary").  *Id.* at ¶ 21.  The declaration of trust named Nova Group, LLC ("Nova") as COT's sponsor, fiduciary, and corporate trustee.  *Id.* at ¶ 24.  The corporate trustee's duties consisted of managing COT's assets. ECF No. 1-2 at §§ 2.24, 10.02.  The declaration of trust vested the power "[t]o compromise, settle[,] or adjust any claim or demand by or against the Trust and/or th[e] Plan & Trust with regard to . . . any insurance policy that may be held thereunder" with the insurance trustee.  *Id.* at § 12.01.  The declaration of trust did not identify an insurance trustee and instead gave an interested third-party (subject to the plan sponsor's approval) the authority to appoint an insurance trustee.  *Id.* at § 2.13.  Ridgewood, a private equity group financing COT with millions, acted as the interested third-party and later appointed Wilmington as the insurance trustee.[1]  ECF No. 1-1 at ¶¶ 27–28.  Under COT, "any and all disputes

---

[1] The arbitration demand alleges that Ridgewood Finance, Inc., rather than Defendant Ridgewood, acted as the interested third-party and that Christiana Bank & Trust Company, rather than Plaintiff Wilmington, acted as the insurance trustee.  For the sake of clarity, the Court refers to Ridgewood Finance, Inc. and Christiana Bank & Trust Company as Ridgewood and Wilmington, who are their successors-in-interest.

regarding the Trust or the Plan shall be settled by Arbitration."[2]  *Id.* at ¶ 18 (internal quotation marks and alteration omitted).

The arbitration demand further alleged that Holding Capital Group, Inc., a participating employer in COT, purchased two life insurance policies totaling $30 million for its chief executive officer, Sash A. Spencer.  *Id.* at ¶ 48.  Spencer selected Universitas, the research and development arm of a charitable foundation, as his insurance beneficiary.  *Id.* at ¶¶ 9, 48.  Spencer died in 2008, and the insurance company tendered his death benefits to COT in 2009.  *Id.* at ¶ 50.  COT rebuked Universitas's demand for those benefits.  *Id.* at ¶ 51.  Instead, Carpenter and his associates transferred the money to shell entities controlled by Carpenter, who thereafter used it for his own purposes, including purchasing a beachfront vacation home.  *Id.* at ¶ 53.  Universitas seeks to hold Wilmington liable under the following common law causes of action: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, aiding and abetting fraud, theft, and aiding and abetting theft.  *Id.* at ¶¶ 66, 71, 76, 82, 87, 94.

In June 2015, Wilmington brought a one-count complaint in Connecticut Superior Court seeking a declaratory judgment ruling that Wilmington is not required to arbitrate its dispute with Universitas.  ECF No. 1-2 at ¶¶ 16–24.  The

---

[2] The declaration of trust, which was attached to the arbitration demand, also adopts the Commercial Arbitration Rules of the American Arbitration Association.  ECF No. 1-2 at § 8.02(d).  Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or controversy." AAA Commercial Arbitration Rules, at R-7, *available at https://www.adr.org.*

complaint, which names Universitas and Ridgewood, contains the following allegations. *Id.* at ¶¶ 3–4. There are two trusts named COT, one sponsored by Nova and one sponsored by Grist Mill Capital, LLC ("Grist Mill"). *Id.* at ¶¶ 9, 12. Universitas alleges that it was named the insurance beneficiary of policies held by Nova COT. *Id.* at ¶ 10. Ridgewood, on the other hand, appointed Wilmington to serve as the insurance trustee for Grist Mill COT pursuant to the purported appointment agreement. *Id.* at ¶ 12. Wilmington did not serve as insurance trustee to Nova COT and did not otherwise consent to arbitrate any dispute with Universitas. *Id.* at ¶ 14. The complaint also names Ridgewood, but the complaint seeks no relief from Ridgewood. Ridgewood and Wilmington are separately represented by different law firms.

Universitas removed the action to federal court solely on the basis of diversity jurisdiction, arguing as follows. ECF No. 1 at ¶ 5. The amount in controversy exceeds $75,000 because the arbitration concerns a multimillion-dollar dispute. *Id.* at ¶ 6. Wilmington, a citizen of Delaware, and Universitas, a citizen of New York, are completely diverse. *Id.* at ¶¶ 8–9. Ridgewood, a citizen of Delaware and Connecticut, defeats diversity jurisdiction, but it was fraudulently joined. *Id.* at ¶ 10. The state-court complaint does not state a claim against Ridgewood, and Ridgewood's presence is "entirely unnecessary" to resolve the question of arbitrability. *Id.* at ¶ 12.

I.    **Motion to Remand and First Motion to Dismiss**

Wilmington moves to remand the action back to state court.  ECF No. 19.

Wilmington does not dispute the amount in controversy or that Wilmington and

Universitas are completely diverse.  ECF No. 20 at 7–8.  Wilmington contends that

Universitas failed to prove fraudulent joinder.  *Id.* at 9–15.  Wilmington argues that

Ridgewood is an "essential party" to the arbitration dispute because the Court

cannot determine arbitrability without first interpreting the appointment

agreement and because Ridgewood may be joined under Connecticut's

Declaratory Judgment Act as an interested party.  *Id.* at 12.  Wilmington also

argues that it "stated a claim properly against Ridgewood under the Connecticut

[Declaratory Judgment] Act" because Ridgewood and Wilmington's interests are

adverse, a legal dispute exists over whether Ridgewood has a contractual

obligation to indemnify it and whether Ridgewood appointed Wilmington as the

insurance trustee, and the dispute over arbitrability affects Ridgewood.  *Id.*

Wilmington also seeks costs and attorney fees.  *Id.* at 15–16.

Universitas opposes the motion, reiterating the arguments from its notice

of removal.  ECF No. 39.  Ridgewood opposes as well, raising the following two

arguments.  ECF No. 38.  First, the state-court complaint fails to state a claim

against Ridgewood because Wilmington does not allege a case or controversy

involving Ridgewood.  *Id.* at 5–6.  Wilmington and Ridgewood have an

indemnification dispute, but the state-court complaint does not raise that

allegation, which is the subject of a separate action.  *Id.* at 6 n.3.  Second,

8

Ridgewood is not essential because Connecticut law does not require that it be joined; Wilmington must only provide notice.  *Id.* at 6–7.  Ridgewood also moves to dismiss the purported claims against it, relying on the same reasons as articulated in its memorandum in opposition to remand.  ECF Nos. 26, 27.

## II.   <u>Proposed Amended Complaint and Second Motion to Dismiss</u>

Wilmington has also filed an amended complaint in this Court, reiterating its allegation that Ridgewood appointed it to act as the insurance trustee for a different trust, the Grist Mill COT.  ECF No. 34.  This time around Wilmington's one-count complaint seeks a declaratory judgment with five sub-rulings, including the following three sub-rulings: Ridgewood had the authority to appoint an insurance trustee for the Grist Mill COT; Ridgewood appointed Wilmington as the insurance trustee for Grist Mill COT; and Ridgewood did not appoint Wilmington to act as insurance trustee for the Nova COT.  *Id.* at ¶ 36.

Ridgewood moves to dismiss, arguing that the amended complaint again fails to state a claim against Ridgewood and that Ridgewood is not a necessary party because the only existing dispute concerns the arbitrability of a dispute between Wilmington and Universitas.  ECF No. 42.  Wilmington opposes, arguing as follows.  ECF No. 49.  The amended complaint properly seeks a declaratory judgment against Ridgewood because the Court must interpret the appointment agreement before determining arbitrability.  *Id.* at 7–9.  A controversy exists between Wilmington and Ridgewood because Wilmington has a claim against Ridgewood that it did not appoint Wilmington to act as an insurance trustee.  *Id.*

9–11.   Ridgewood's interest in this legal controversy is adverse to Wilmington because Ridgewood is defending itself in this action and the parties dispute whether Ridgewood must indemnify Wilmington.  *Id.*  Ridgewood is a necessary party because of its participation in the appointment agreement and, even if it were only a permissible party, dismissal would be inappropriate.  *Id.* at 12–15.

III.   <u>Motions to Compel Arbitration and Stay Proceedings</u>

Universitas further moves to compel arbitration, arguing as follows.  ECF No. 30.  The only dispute is whether a valid arbitration agreement exists.  ECF No. 31 at 11.  One exists because Wilmington agreed to arbitrate any disputes arising out of the purported Grist Mill COT.  *Id.* at 12 (citing ECF No. 31-5 (Grist Mill COT Declaration of Trust)).  The purported Grist Mill COT is the same trust as the purported Nova COT, which held the Spencer policies, because the evidence demonstrates that Wilmington acted as the insurance trustee over the Spencer policies.  *Id.* (citing ECF Nos. 31-11 (Trust Vault Receipt); 31-12 (Account Statement)).  There is no evidence that two COTs existed, "each with the same effective date, the same name, the same federal tax identification number, the same internal Christiana account number, created by identical trust instruments, and each somehow accepted the Spencer policies as Trust assets."  *Id.* at 13.  Universitas moves to stay, arguing that the Second Circuit requires one and that denying one would allow "an intransigent party to stymie and delay arbitration further by forcing the case through the appellate process."  *Id.* at 13–14.

Universitas attaches in support, *inter alia*, "a true and correct copy of excerpts of the transcript of Jack Robinson's sworn testimony, given during the December 2010 American Arbitration Association arbitration hearing in Case No. 13-195-Y-1558-10."   ECF No. 31-2 at ¶ 3.   Robinson testified that the two COT declarations of trust are versions of the same trust.  ECF No. 31-4.   Universitas does not rely on this evidence in its argument section and instead utilizes it in its fact section to describe the Grist Mill COT declaration of trust as a draft. Moreover, in its declaration in support, Universitas describes the Grist Mill COT declaration of trust as a draft.  ECF No. 31-2 at ¶ 4.  Wilmington moves to strike Robinson's deposition testimony because it constitutes inadmissible hearsay, any assertion of fact relying on his deposition testimony as unfounded, and paragraph four from the declaration in support because the statement exceeds the declarant's personal knowledge.  ECF No. 46 at ¶¶ 10–12.  Universitas does not oppose the motion to strike.  ECF No. 48 at 4.

Wilmington opposes the motion to compel arbitration, arguing as follows. ECF No. 44.  Universitas has not produced any agreement demonstrating that Wilmington and Universitas agreed to arbitrate the dispute now pending before the American Arbitration Association.  *Id.* at 2.  The arbitration demand solely concerns Wilmington's purported role as insurance trustee for Nova COT.  *Id.* at 10.  There is no record evidence that Wilmington agreed to be bound by Nova

COT's declaration of trust, which includes an arbitration agreement.[3]  *Id.* at 10–11. Robinson's testimony cannot be considered on this point (for the reasons articulated in its motion to strike), and no other evidence supports this position. *Id.* at 12–13.  Wilmington does not explicitly state reasons for denying a stay, but presumably opposes a stay on the grounds that the dispute is not arbitrable.

Universitas replies that, even assuming the existence of two trusts, Wilmington agreed to arbitrate its dispute with Universitas.   ECF No. 48. Wilmington agreed to arbitrate all disputes pertaining to Grist Mill COT, and Grist Mill COT held the Spencer policies, as evidenced by Wilmington's trust vault receipt and account statements.   *Id.* at 3.   Wilmington sur-replies that the Court should not consider Universitas's new argument and that it nonetheless fails to demonstrate an agreement to arbitrate because Nova COT still forms the entire basis of Universitas's arbitration demand.  ECF No. 53 at ¶¶ 6–7.

---

[3] In support of its argument, Wilmington provides only a copy of the purported Grist Mill COT declaration of trust and a declaration from Jeffery Everhart.  ECF Nos. 44-1; 44-2.  Wilmington relies on the Everhart declaration to demonstrate that Wilmington did not possess a copy of the purported Nova COT and that Wilmington never received notice of a change of plan sponsor.  ECF No. 44 at 7–8.

## LEGAL DISCUSSION

I.   <u>Motion to Remand and First Motion to Dismiss</u>

A party generally may not remove an action from state to federal court unless the federal court possesses original jurisdiction.  28 U.S.C. § 1441(a).  The removing party bears the burden of proof.  *See United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).  Universitas invokes diversity jurisdiction.[4]  ECF No. 1 at ¶ 5.  Diversity jurisdiction exists over "civil actions where the matter in

---

[4] This Court may not consider whether federal-question jurisdiction exists because Universitas does not assert that jurisdictional basis in its notice of removal.  *See Lastih v. Elk Corp. of Alabama*, 140 F.Supp.2d 166 (D. Conn. 2001) (denying motion to amend notice of removal to add an assertion of federal-question jurisdiction to previous assertion of diversity because more than 30 days had passed); *cf. Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (declining to exercise diversity jurisdiction because notice of removal relied solely on federal-question jurisdiction and did not allege amount in controversy). This rule applies even where, as here, the underlying claims possibly implicate a federal court's exclusive jurisdiction.  *Cf. Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1255 (9th Cir. 1989) (remanding action removed on the basis of ERISA preemption because action was removed after the 30-day limitation period).

The Court uses the word "possibly" for the following reasons.  Federal district courts have jurisdiction over arbitrability disputes if the well-pleaded arbitration demand raises a federal claim.  *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009).  The arbitration demand here alleges common law causes of action, but ERISA preempts any state law claims that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  A claim relates to an employee benefit if the claim "purports to provide a remedy for the violation of a right expressly guaranteed by [ERISA]."  *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).  ERISA expressly provides a plan beneficiary with a right to bring a claim for breach of fiduciary against a plan fiduciary.  29 U.S.C. § 1132(a)(2).  From the face of the arbitration demand, it appears that COT, a MEWA, is an employee benefit plan, that Universitas is a plan beneficiary, and that Wilmington is a plan fiduciary.  The Court, however, declines to answer these questions and instead proceeds with its discussion on diversity jurisdiction.

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1). "Citizens of different states" requires complete diversity, i.e., the citizenships of all defendants must be different from the citizenships of all plaintiffs. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990).

This action meets the amount-in-controversy requirement.  In an action seeking a declaratory judgment ruling that the parties are not required to arbitrate, the arbitration demand determines the amount in controversy. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996); *see Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160–61 (2d Cir. 1998) (citing *Webb* with approval and observing that, in petition to compel arbitration, amount in controversy determined by arbitration demand).  The arbitration demand seeks millions, easily exceeding $75,000 requirement.  ECF No. 1-1 at 21.

Ascertaining citizenship also presents little difficulty.  Wilmington is a citizen of Delaware because it is a federal savings bank with its home office in Delaware.  *See* 12 U.S.C. § 1464(x) ("In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office."); *see* 12 U.S.C. § 1813(b)(2) ("The term 'Federal savings association' means any Federal savings association or Federal savings bank.").  Universitas is a citizen of New York because it is a limited liability company with two individual members who are

14

both citizens of New York.   *Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62, 63 (2d Cir. 2013).   Ridgewood is a citizen of Delaware and Connecticut because it is a limited liability company with one corporate member incorporated in Delaware with its principal place of business in Connecticut.  *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (observing that LLC derives citizenship from each of its members, including domestic corporation that obtains citizenship from its place of incorporation and principal places of business).

The jurisdictional dispute turns on whether Wilmington fraudulently joined Ridgewood because the action satisfies the amount-in-controversy requirement and complete diversity exists only if Ridgewood is not a proper party to the action.   To demonstrate fraudulent joinder, the diverse defendant "must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).   In ruling on fraudulent joinder, a court must resolve all factual and legal issues in plaintiff's favor.  *Id.*   A court may examine evidence outside of the pleadings but only if that evidence "clarif[ies] or amplif[ies] claims actually made in the notice of removal."   16 *Moore's Federal Practice*, § 107.14[2][c] (Matthew Bender 3d ed.) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699–702 (5th Cir. 1999)).   A court cannot consider "post-

removal filings when reviewing a fraudulent joinder claim [if] they raise a new cause of action or theories not raised in the controlling petition filed in state court." *Id.* A court may resolve a fraudulent joinder claim without holding an evidentiary hearing. *See Pampillonia*, 138 F.3d at 461 (deciding fraudulent joinder issue on affidavits submitted by parties).

Defendant Universitas does not assert that Wilmington committed fraud and instead argues that Wilmington cannot recover from Ridgewood because Wilmington has asserted no claims against Ridgewood.[5]  ECF No. 1 at ¶ 12.  This

---

[5] Defendant Universitas also raises the following argument under its fraudulent joinder heading.  ECF No. 1 (Notice of Removal) at ¶¶ 14–15.  In a declaratory judgment action, a court must realign the claims and parties as they would appear in a coercive suit.  *Id.* at ¶ 14.  In a coercive suit, such as the ongoing arbitration, Universitas would bring claims only against Wilmington and then Wilmington would involve Ridgewood, either by relying on it for evidence or impleading it as a third-party defendant.  *Id.* at ¶ 15.  Analyzed this way, Ridgewood's citizenship would be irrelevant to the diversity calculus.  *Id.*

The Court finds this argument confusing for two reasons.  First, the argument does not appear to implicate fraudulent joinder.  Fraudulent joinder requires dismissal of the fraudulently joined party.  In Universitas's hypothetical, Ridgewood could properly be joined as a third-party defendant.  Second, as Universitas correctly observes, realignment under "*Skelly Oil* and its canonical progeny are doctrines of federal-question jurisdiction," and that type of realignment "has been extended to the diversity jurisdiction context as well." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 68 (2d Cir. 2012).  *Garanti*, however, cites to cases where realignment occurred for the purpose of assessing the amount in controversy, not the citizenship of the parties.  Realignment of all parties would not alter the diversity calculus.

The argument for realignment is thus separate from the question of fraudulent joinder, and realignment appears to be based on the collision-of-interests test, which requires an "actual, substantial controversy." *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993) (declining to realign the parties to defeat diversity in a declaratory judgment action brought by insurer against insured and insured's current insurer to determine what obligation, if any, plaintiff insurer owed to defend or indemnify insured).  In other words, assuming

16

Court applies state law to determine whether there is any possibility of recovery against the non-diverse party.[6] *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001); *Cain v. XTO Energy Inc.*, 2012 WL 1068199, at *6 (N.D.W. Va. Mar. 29, 2012) ("[T]he Court will look to whether the plaintiff would be able to establish a possible claim under *the state declaratory judgment act.*").

---

that Ridgewood was properly named as a party, the Court would also need to consider whether Wilmington and Ridgewood have adverse interests in this proceeding concerning the arbitrability of a dispute between Wilmington and Universitas.  The Court does not need to resolve this question.

Nevertheless, where the Court to do so, it would conclude that Wilmington and Ridgewood do not have diverse interests because no claims are asserted against Ridgewood in the arbitration proceeding. Moreover, there is nothing in the record suggesting that Ridgewood has any interest in the forum in which the dispute is resolved. Nor is there any basis to conclude that Wilmington has diverse interests from Ridgewood with regard to the substance of the underlying dispute.  Wilmington and Ridgewood have an identity of interests in the substance of the dispute in its present posture.  The interests of both Ridgewood and Wilmington are advanced by a finding that Wilmington was not the insurance trustee because that finding would absolve both Wilmington and Ridgewood from any liability to Universitas. Even if Wilmington was the insurance trustee for the operative trust, there is nothing in the record to suggest that Wilmington and Ridgewood would have adverse interests because there are no contractual defenses or conditions precedent to Ridgewood's duty to indemnify Wilmington. There is nothing on the record from which to conclude that there is an "actual, substantial controversy" between Wilmington and Ridgewood.

[6] *Whitaker*'s reference to "the law of the state" means the state's <u>substantive</u> law.  Connecticut's declaratory judgment act, however, is a <u>procedural</u> vehicle for asserting substantive legal questions.  Thus, it's not entirely clear whether state or federal law applies.  If state law applies and Connecticut's declaratory judgment procedure is more permissive than the federal declaratory judgment procedure, would the Court then be required to conduct a fraudulent <u>mis</u>joinder analysis?  *See, e.g., Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  Further, with respect to the substantive legal dispute involved in the declaratory judgment action, it's not entirely clear which state's law would apply under Connecticut's choice-of-law rules.  The parties tacitly agree that Connecticut law applies, and the Court thus applies Connecticut law, expressing no opinion as to which law applies.

Connecticut permits a party to seek a declaratory judgment if (1) "the interests are adverse"; (2) "there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement"; (3) "all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof"; and (4) the determination will result in practical relief to the complainant.  *Milford Power Co., LLC v. Alstom Power, Inc.*, 263 Conn. 616, 626 (2003).  The dispute "must rest on some cause of action that would be cognizable in a nondeclaratory suit."  *Wilson v. Kelley,* 224 Conn. 110, 116 (1992).

The pleadings suggest a single coercive proceeding: an application for an order to proceed with arbitration pursuant to Connecticut General Statutes § 52-410.  *See Webb*, 89 F.3d at 256–57 ("The Webbs also sought a judgment 'declaring that the written documents in question do not require the Webbs to submit to arbitration.' These claims are sufficiently analogous to a motion to compel arbitration.").  Ridgewood could not bring such an application against Wilmington.  The reason is simple.  In the underlying arbitration, Ridgewood asserts no causes of action against Universitas or Wilmington, and Universitas and Wilmington assert no causes of action against Ridgewood.  ECF No. 1-1 at ¶¶ 66, 71, 76, 82, 87, 94.  Indeed, none of the pre-removal filings suggest that a cause of action could be stated against Ridgewood in an arbitration proceeding because none of the filings demonstrate or even allege that Ridgewood agreed to arbitrate with Universitas or Wilmington.  The post-removal filings point to an

indemnification dispute between Ridgewood and Universitas, but even those filings do not suggest an arbitrable dispute that could result in an application to compel arbitration.  *See* ECF No. 39-4.  Wilmington therefore does not seek any relief from Ridgewood by seeking a declaratory judgment ruling that it is not bound to arbitrate.

Wilmington's argument that Ridgewood is an "essential" party to the arbitrability dispute touches on "[a]n additional basis upon which a defendant must be considered for diversity purposes."  *Zhaoyin Wang v. Beta Pharma, Inc.*, 2015 WL 5010713, at *5 (D. Conn. Aug. 24, 2015).  This Court, as well as other district courts in this Circuit, consider a non-diverse defendant's citizenship if that "defendant is a necessary or indispensable party to the lawsuit," even when the complaint states no cause of action against the non-diverse party.  *Id.* (internal quotation marks and alterations omitted).  The terms necessary and indispensable derive from Federal Rule of Civil Procedure 19.  *See* 9 *Moore's Federal Practice*, § 19.02[2][a] (Matthew Bender 3d ed.).  "Necessary refers to those absentees who should be joined in the pending case; if joinder is not feasible, however, the present action can continue without necessary parties. Indispensable refers to those absentees who must be joined in the pending case if it is to go."  *Id.* at § 19.02[2][c] (Matthew Bender 3d ed.).  "Connecticut courts look to federal jurisprudence in determining whether a party is necessary or indispensable," *Zhaoyin Wang*, 2015 WL 5010713, at *6, so the Court need not resolve whether to apply state or federal law.

19

Ridgewood does not qualify as a necessary or indispensible party to the declaratory judgment ruling on arbitrability. To be considered necessary, one of two things must be true: (1) the Court cannot accord complete relief among existing parties; or (2) "the unjoined party has an interest in the litigation and his absence may either impede his ability to protect that interest or subject the already-joined parties to a risk of inconsistent obligations—which often means the risk of piecemeal litigation." *Doctor's Assocs.*, 66 F.3d at 446 (citing Fed. R. Civ. P. 19(a)). These requirements are not met.

The Court may declare that Wilmington is not bound to arbitrate without Ridgewood because Ridgewood is not a party to the arbitration agreement. *See id.* ("A district court should not consider the citizenship of strangers to the arbitration contract, since they are not 'parties' [to] the suit arising out of the controversy within the meaning of the FAA."). The arbitration agreement is COT, even though Wilmington's alleged obligation to indemnify derives from its subsequent agreement to be bound by COT. The following analogy illustrates the point. Where one party becomes obligated to arbitrate pursuant to assignment, the only parties needed to compel arbitration are the parties disputing arbitration (the assignee and obligor), not the assignor, because the arbitration agreement lies in the initial contract, not the assignment contract. *See, e.g., Cedrela Transp. Ltd. v. Banque Cantonale Vaudoise*, 1999 WL 782494, at *1 (S.D.N.Y. Sept. 30, 1999) (interpreting assignment agreement and compelling arbitration without assignor's participation). The assignee and assignor may have a different

20

dispute, but that dispute doesn't concern arbitrability.  Ridgewood never agreed to arbitrate any disputes (including its ongoing, state-court, indemnification dispute with Wilmington), it merely provided Wilmington with a right/obligation to arbitrate with COT beneficiaries.

The second half of Rule 19's test is not met either.  Ridgewood also has no interest in the forum where Wilmington and Universitas litigate their substantive dispute because Ridgewood is not an arbitration participant.[7]  As a nonparty, Ridgewood would not be bound by any factual or legal determination made by this Court.  Ridgewood's participation is therefore unnecessary to protect any interest because it has no interest to protect.  Moreover, the failure to include Ridgewood would not expose Wilmington or Universitas to multiple liability, only determine where those parties resolve their substantive dispute.

Wilmington nonetheless argues that it "stated a claim properly against Ridgewood under the Connecticut [Declaratory Judgment] Act" because, *inter alia*, a legal dispute exists over whether Ridgewood has a contractual obligation to indemnify it and whether Ridgewood appointed Wilmington as the insurance trustee.  ECF No. 20 at 12.  This argument misses the point.  These disputes may suggest separate, yet related, causes of action against Ridgewood (and by extension a separate, yet related, declaratory judgment), but they do not suggest

---

[7] Because Ridgewood is not a party interested in the arbitrability dispute, the Court declines to address Wilmington's argument that Connecticut permits the joinder of any interested party, a rule ostensibly broader than Federal Rule of Civil Procedure 19 and thereby raising the specter of fraudulent misjoinder.

that Ridgewood is a party to the arbitrability dispute.  Moreover, neither of these arguments demonstrates that, *based on the pleadings*, Wilmington could seek a separate, yet related, declaratory judgment against Ridgewood.   The first assertion identifies a cognizable legal dispute.  The problem, however, is that the complaint did not raise any factual allegations supporting this theory of relief— that is, a declaratory judgment concerning the parties indemnification rights and obligations. *See* 16 *Moore's Federal Practice*, § 107.14[2][c] (Matthew Bender 3d ed.); *cf. Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) (observing that courts evaluate right to removal at the time removal notice filed).   The appointment agreement, which was attached to the state court complaint, omitted the section governing Ridgewood's obligation to indemnify Wilmington.

The second argument suffers from the same flaw: the state-court complaint does not seek a declaratory judgment ruling on the scope of Wilmington's role as an insurance trustee.  Moreover, the complaint summarily asserts, but does not identify, a *legal* dispute that could be brought in a coercive suit between Ridgewood and Wilmington.   By purportedly appointing Wilmington as the insurance trustee, Ridgewood acted as COT's agent because the trust received a benefit from Wilmington in exchange for consideration paid by COT.  "An agent who makes a contract on behalf of a competent, disclosed principal, does not become liable on the contract."  *Precision Mech., Inc. v. Empyrean Hosp.*, 2007 WL 3011010, at *2 (Conn. Super. Ct. Sept. 26, 2007).  If Wilmington failed to fulfill its obligations as insurance trustee, a beneficiary would bring a coercive action

22

against Wilmington, not the party selecting the trust's insurance trustee. *See Spezzano v. Andersen*, 2014 WL 2696724, at *3 (Conn. Super. Ct. May 13, 2014) ("It is axiomatic that in order for there to be a breach of fiduciary duty, a fiduciary relationship must exist in the first instance."). Wilmington's claims against Ridgewood are limited to the independent consideration provided by Ridgewood: indemnification. *See* 12 S. Williston, Contracts § 35:37 (4th ed. 2012) ("While an agent is not ordinarily liable . . . , the agent may, for good consideration, make a personal contract of warranty that will be binding and enforceable."). However, as noted above, the complaint does not make any allegations with respect to the indemnification dispute.

In sum, Wilmington's state-court pleadings do not establish any possibility of a claim against Ridgewood. Ridgewood is not a permissive, necessary, or indispensible party to the declaratory judgment against Universitas. The one-count complaint seeks only this declaratory judgment. The allegations do not suggest another legal dispute that could be brought in a coercive suit with respect to the appointment agreement, whether the dispute relates to indemnification or the scope of Wilmington's role as insurance trustee. Accordingly, the Court DENIES the motion to remand and for costs and attorney fees and GRANTS Ridgewood's motion to dismiss.[8] *Pampillonia*, 138 F.3d at 462

---

[8] Wilmington argues that its amended complaint moots Ridgewood's first motion to dismiss. ECF No. 40 at 6–7. However, as demonstrated below, a plaintiff needs permission before filing an amended complaint when the amended complaint attempts to circumvent the application of fraudulent joinder through

("Accordingly, since there is no possibility, based on the pleadings, that plaintiff can state a cause of action against RJRN in state court, the district court correctly denied plaintiff's motion to remand to the state court and granted the motion to dismiss RJRN as a party to the action.").

II.   **Proposed Amended Complaint and Second Motion to Dismiss**

The Court must now determine the legal effect of the amended complaint, which purports to seek a declaratory judgment against Ridgewood, because the Court dismissed Ridgewood from the original complaint.   A plaintiff may ordinarily file an amended complaint without leave within 21 days of the answer. *See* Fed. R. Civ. P. 15(a)(1)(B).   The federal statute governing the procedure after removal generally, however, provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."   28 U.S.C. § 1447(e).   These two principles create a conflict in cases where, as here, a plaintiff raises a new theory of relief against a non-diverse defendant who either was dismissed as fraudulently joined or added as a new defendant after removal.   The Second Circuit has not addressed how to handle this conflict, but "every federal court that has considered the issue has found that the discretionary decision called for by § 1447(e) is appropriate even when plaintiff has amended as a matter of course under Rule 15(a)(1)(A)."   *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F.Supp.2d 258, 261 (E.D.N.Y. 2009).   Joinder

the addition of new theories of relief.

24

of a non-diverse defendant is appropriate only if amendment satisfies Federal Rule of Civil Procedure 20 and "remand under Section 1447(e) would 'comport with the principles of fundamental fairness.'" *Hosein v. CDL W. 45th St., LLC*, 2013 WL 4780051, at *4 (S.D.N.Y. June 12, 2013) (quoting *Deutchman v. Express Scripts, Inc.,* 2008 WL 3538593, at *3 (E.D.N.Y. Aug. 11, 2008)).

Federal Rule of Civil Procedure 20 provides that multiple defendants may be joined in the same federal action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Fundamental fairness requires consideration of "'(1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment.'" *Collins v. Kohl's Dep't Stores, Inc.*, 2004 WL 1944027, at *2 (D. Conn. Aug. 26, 2004) (quoting *Nazario v. Deere & Company,* 295 F.Supp.2d 360, 363 (S.D.N.Y. 2003)).  "Diversity-destroying joinder is permitted when the factors weigh in the moving party's favor." *Nazario*, 295 F.Supp.2d at 363.  Where, as here, the amendment raises the prospect of "fraudulent joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant." *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999).

25

The convoluted nature of the amended complaint complicates the application of these principles because it purports to seek a single declaratory judgment but actually seeks a separate declaratory judgment from Ridgewood. Wilmington seeks a declaratory judgment ruling that it is not bound to arbitrate its dispute with Universitas pursuant to COT but also now seeks sub-rulings concerning "an interpretation of the legal rights arising under the Appointment Agreement," a separate agreement. As already explained, Ridgewood is not a party to any declaratory judgment concerning arbitrability. The Court therefore construes Wilmington to be seeking a separate declaratory judgment interpreting its legal rights under the appointment agreement. Rule 20 permits the joinder of this separate "claim" against Ridgewood because all claims arise out of the same series of transactions and common questions of fact will be litigated.

The problem, however, is that permitting Wilmington to amend its complaint to seek a separate declaratory judgment against Ridgewood would not comport with fundamental fairness. The dispositive reason is that there is no possibility, based on the amended pleadings, that Wilmington can state a cause of action against Ridgewood. The amended complaint alleges a dispute concerning the scope of Wilmington's duties as insurance trustee vis–à–vis the appointment agreement. However, in a coercive suit, Ridgewood has no legal claim against Ridgewood for failure to act as insurance trustee. If Wilmington failed to fulfill its obligations as insurance trustee, a beneficiary would bring a coercive action against Wilmington, not the party selecting the trust's trustee.

26

*See Spezzano*, 2014 WL 2696724, at *3; *see also Precision Mech.*, 2007 WL 3011010, at *2.  Wilmington's rights are limited to its indemnification agreement, and the amended complaint contains no allegations with respect to indemnification.

Even assuming that Wilmington properly sought a declaratory judgment ruling against Ridgewood, the other factors also demonstrate that amendment should be denied.  The amendment delay is not substantial, but the delay—as well as Wilmington's motivation for amendment—can only be attributed to Wilmington's attempt to defeat fraudulent joinder.  Defendants in this case would be prejudiced by remand because it would entail duplicative litigation that could have been avoided had the state-court complaint prevented removal in the first place.  Further, the denial of amendment will not lead to multiple suits on this issue because, aside from indemnification, Wilmington has no independent legal claim against Ridgewood that could be separately litigated.

Finally, it would appear that amendment would be futile.  Ridgewood and Wilmington have an identity of interest. Ridgewood's exposure to liability is inextricably linked to Wilmington's exposure because Ridgewood is Wilmington's indemnitor.  There is nothing in the record suggesting that Ridgewood had an interest in the dispute resolution forum, that Ridgewood challenges Wilmington's claim that Ridgewood has a duty to indemnify it, or that Ridgewood either possesses or has asserted any defenses against a now inchoate claim by Wilmington for indemnification.  There is therefore nothing in the pleadings or

27

other record evidence suggesting that there is any case or controversy between Wilmington and Ridgewood affecting arbitrability or the substance of the underlying dispute, which should be considered in determining arbitrability, or an arbitration of the underlying dispute.

In sum, the proposed amendment seeks a new declaratory judgment against Ridgewood concerning an interpretation of the appointment agreement. That declaratory judgment, however, does not suggest an underlying cause of action that could be stated in a coercive suit because Ridgewood's only rights and obligations vis–à–vis the appointment agreement concern indemnification and the amended complaint makes no allegations concerning indemnification. Moreover, even assuming that the amended complaint properly sought a new declaratory judgment, permitting Wilmington to circumvent fraudulent joinder by amendment has no equitable justification. Accordingly, the Court STRIKES Ridgewood as a party from the amended complaint and DENIES as moot Ridgewood's second motion to dismiss.

III.   <u>Motions to Compel Arbitration and Stay Proceedings</u>

The Federal Arbitration Act ("FAA"), which applies to transactions involving interstate commerce, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Section 4 of the FAA authorizes federal district courts to compel a party to comply with an agreement to arbitrate."  31 *Moore's Federal Practice*, § 904.03[4] (Matthew Bender 3d ed.).  A

motion to compel may be filed as an independent proceeding or, as here, in an ongoing federal proceeding. *See Hartford Fin. Sys., Inc. v. Florida Software Servs., Inc.*, 712 F.2d 724, 728 (1st Cir. 1983) (observing that motions to compel are normally brought as independent proceedings but they may occasionally be raised in an ongoing proceeding).

When ruling on a motion to compel arbitration, courts employ "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). The moving party bears the initial burden of putting forth evidence demonstrating an agreement to arbitrate. *See Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995). Once the moving party does so, the non-moving party "may not rest on a denial but must submit evidentiary facts showing" a disputed factual issue. *Id.* If the evidence suggests a genuine issue of material fact, the district court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

A federal court must compel arbitration if "a valid agreement or obligation to arbitrate exists" and "one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quotation marks and citations omitted). There is no dispute that Wilmington refuses to arbitrate, which leaves only the question of arbitrability. A valid agreement to arbitrate exists when "the parties agreed to arbitrate" and "the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotation marks and

29

citations omitted).   The sole dispute over arbitrability concerns whether the parties agreed to arbitrate because Wilmington does not dispute that the purported arbitration agreement covers any and all disputes relating to trust beneficiaries or that the arbitrator would determine the scope of the arbitration agreement.   Courts apply state law when determining whether the parties agreed to arbitrate.[9]  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).

Before determining whether the parties agreed to arbitrate, the Court must assess what evidence to consider.   Wilmington moves to strike paragraph four from Attorney Lang's Declaration Exhibit D because the statement exceeds Lang's personal knowledge, Jack E. Robinson's deposition testimony because it constitutes inadmissible hearsay, and any assertion of fact relying on his deposition testimony as unfounded.   ECF No. 46 at ¶¶ 10–12.   Universitas states that "it would be a fruitless exercise to debate the merits of WSFS/Christiana's

---

[9] **Universitas neither identifies what law applies nor cites any cases in its argument section.   ECF No. 31 at 11–13.   Wilmington argues that Connecticut law applies because the Nova COT provides that Connecticut law applies.   ECF No. 44 at 9.   Wilmington's argument puts the cart before the horse: the arbitration agreement cannot determine what law applies if the parties dispute whether they agreed to the agreement.   The proper analysis applies Connecticut's choice of law rules because this is a diversity action.   *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 49 n.2 (2d Cir. 1993) (citation omitted).   In Connecticut, "'[t]he general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction.'"   *Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499, 506, 356 A.2d 139, 143 (1975).   The Court lacks sufficient information to apply this test, so it will adopt Wilmington's assertion because Universitas does not dispute it.**

objection." ECF No. 48 at 4.  The Court GRANTS the motion to strike because Universitas failed to submit a memorandum in opposition.  *See* Local R. Civ. P. 7(a)(1) ("Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion.").

The arbitrability question requires the Court to determine whether, as a matter of law, Wilmington and Universitas agreed to arbitrate their current dispute over the Spencer polices.  The undisputed evidence shows the following. Wilmington agreed to serve as insurance trustee for the purported Grist Mill COT.[10]  ECF No. 31-5 (Appointment Agreement).  Wilmington agreed to arbitrate any and all disputes relating to the purported Grist Mill COT by virtue of its appointment as insurance trustee.  ECF No. 31-5 (Grist Mill COT).  As insurance trustee for the purported Grist Mill COT, Wilmington opened a corporate trust account with the identification number CH125161-0.  ECF Nos. 31-8 (Letter); 31-9 (New Account Form).  One of the Spencer policies was placed in trust account numbered CH125161-0, opened by Wilmington incident to its appointment as insurance trustee. ECF Nos. 31-11 (Trust Vault Receipt); 31-12 (Account Statement). It is also undisputed that both policies were monitored by

---

[10] The Court uses the word "purported" because it does not determine whether one or two trusts existed.  The Court does not reach this question because there is no *evidence* demonstrating that a trust named COT and sponsored by Nova held the Spencer policies.  Had it done so, the Court would have concluded that the purported Grist Mill COT and Nova COT are the same trust because that evidence, along with the record evidence, would have demonstrated that both trusts held the Spencer policies.

Wilmington.  *Id.*  Wilmington provides no explanatory or contrary evidence to refute the implication that these facts establish that it acted as insurance trustee for the Spencer policies.  Thus, the undisputed evidence establishes that Wilmington acted as insurance trustee for the Spencer policies pursuant to the appointment agreement in which Wilmington admittedly agreed to arbitrate any and all disputes relating to its performance of its duties as insurance trustee.

Wilmington raises two challenges.  It first argues that the Court is not required to consider the argument above because it was raised for the first time in a reply memorandum.  ECF No. 53 at ¶ 5.  Wilmington is correct that the Court is not *required* to consider the argument, but the Court may consider new arguments as long as the opposing party has a fair opportunity to respond.  *Cf. Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) (observing that no-new-arguments rule stems from party's inability to respond but that "there do exist circumstances in which a court may consider, or even raise *sua sponte,* arguments ignored or left undeveloped by counsel in the first round of briefing").  The new argument is based entirely on evidence previously in the record, and Wilmington has filed an adequate, substantive response.  No unfairness will result from its consideration.

As to the substance, Wilmington argues that the amended arbitration demand still alleges that Nova COT held the Spencer policies and as such, Universitas can identify no agreement to arbitrate pursuant to Nova COT.  ECF No. 53 at ¶¶ 6–7.  True, but irrelevant.  The Court is tasked only with examining

32

the record *evidence* to determine whether Wilmington agreed to arbitrate with Universitas.  As Wilmington acted as insurance trustee for the Spencer policies pursuant to the appointment agreement in which it admittedly agreed to arbitrate any and all disputes relating to its performance of its insurance trustee duties, the Court rules that there is sufficient evidence in the record to find, and does find, that Wilmington agreed to act as insurance trustee for the Spencer policies.

Further, a motion to compel arbitration does not require an ongoing arbitration; it merely requires proof that the non-moving party fails, neglects, or refuses to arbitrate.  *See* 31 *Moore's Federal Practice* § 904.03 (Matthew Bender 3d ed.) ("There is no requirement, however, that an arbitration be pending at the time the stay is sought." (citing *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 753 (5th Cir. 1986)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22  (1983) (describing §§ 3 and 4 as "two parallel devices for enforcing an arbitration agreement").  There is no dispute that Wilmington refuses to arbitrate with Universitas, and Wilmington does not now contend that it would happily do so if only Universitas amended its arbitration demand to swap out Nova for Grist Mill.   The Court therefore GRANTS Universitas's motion to compel arbitration.

Relatedly, the Court must also determine whether to stay litigation pending arbitration.  Universitas argues that the denial of a stay allow "an intransigent party to stymie and delay arbitration further by forcing the case through the appellate process" and that the Second Circuit mandates a stay in this

circumstance.  ECF No. 31 at 13.  Universitas is wrong.

Section 3 of the FAA mandates a stay "when all of the claims *in an action* have been referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.) *cert. denied*, 136 S.Ct. 596 (2015) (emphasis added).  In this case, however, no claims have been referred to arbitration.  The one-count complaint seeks a declaratory judgment on an exclusively judicial question.  In other words, this proceeding is "independent" rather than "embedded."  *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 60 (2d Cir. 1993) (observing that a suit is independent when "the plaintiff seeks . . . a declaration that a dispute is arbitrable or not arbitrable, and no party seeks any other relief").  The Court is bereft of proceedings to stay because this order represents its final ruling on the questions raised by this litigation.  *See Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) ("Although the Supreme Court in *Green Tree* called into question the independent-embedded distinction, the Court's reliance on traditional notions of finality suggests that an order in any independent proceeding, *which by definition disposes of all the claims before the court*, would still be a final order under FAA Section 16." (emphasis added)).  The Court therefore DENIES the motion for a STAY and ENTERS judgment for Ridgewood and Universitas.

## CONCLUSION

For the foregoing reasons, the Court: (I) DENIES Wilmington's motion to remand to state court and for costs and attorney fees and GRANTS Ridgewood's

motion to dismiss; (II) STRIKES the amended complaint's attempt to seek a new declaratory judgment ruling against Ridgewood and DENIES as moot Ridgewood's motion to dismiss the amended complaint; (III) GRANTS Wilmington's motion to strike, GRANTS Universitas's motion to compel arbitration, and DENIES Universitas's motion for a STAY.  The Clerk of Court is directed to enter a separate judgment in favor of Universitas and Ridgewood.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut, February 17, 2015.