**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor-in-interest to CHRISTIANA BANK & TRUST COMPANY, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO: 3:15-CV-00911-VLB |
| UNIVERSITAS EDUCATION, LLC, and RIDGEWOOD FINANCE II, LLC, as successor-in-interest to RIDGEWOOD FINANCE, INC., | § § § § § | |
| *Defendants.* | § | April 13, 2016 |

## DEFENDANT UNIVERSITAS EDUCATION, LLC'S
## RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION

After a full opportunity to respond to Defendant Universitas Education, LLC's ("Universitas'") Motion to Compel Arbitration, Plaintiff Wilmington Savings Fund Society, FSB, as successor-in-interest to Christiana Bank & Trust Co. ("Wilmington"), pleads for a do-over. Relying on alleged "new evidence," that is anything but, and a host of new arguments that it could have raised previously, but did not, Wilmington's Motion for Reconsideration requires the Court to ignore well-settled law strictly limiting the bases for reconsideration of a court order.

Regardless, the evidence and arguments Wilmington offers do nothing to undermine the Court's well-reasoned conclusion that Universitas' claims are subject to arbitration. Instead, Wilmington, under the guise of reconsideration, seeks to litigate the merits of Universitas' claims and Wilmington's defenses. But the law is clear and unequivocal: This dispute must be resolved in arbitration.

Wilmington's motion should be denied.

I.    FACTUAL BACKGROUND

      A.    The Arbitration

In April 2015, Universitas filed its Notice of Arbitration and Statement of Claim with the American Arbitration Association.  Universitas asserted various claims against Wilmington arising from Wilmington's role as "Insurance Trustee" of the Charter Oak Trust (the "Trust"), a purported multiple employer welfare benefit trust.  *See* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2015), at 2–7.  Broadly, Universitas alleges that Wilmington breached its contractual and fiduciary duties to Universitas, a Trust beneficiary, by failing to ensure payment to Universitas of approximately $30,000,000 in Trust assets stemming from two high-value life insurance policies insuring the life of Sash Spencer for the benefit of Universitas.  *See id.*, at Exh. C:  Notice of Arbitration.

The Trust is governed by a Declaration of Trust, which provides that "any and all other disputes, claims or controversies (whether or not related to benefits) arising under this Plan & Trust shall be settled by binding arbitration before a single arbitrator in New York, New York, under the commercial arbitration rules of the American Arbitration Association."  *See id.*, at 8 & Exh. E: Decl. of Tr.

      B.    The Litigation

After Universitas commenced arbitration, Wilmington filed suit in a Connecticut state court, arguing that it is not obligated to participate in the arbitration because it is not the Insurance Trustee of the "Charter Oak Trust" at issue in the arbitration—which it now names the "Nova COT"—but of some

mysterious other "Charter Oak Trust"—the so-called "Grist Mill COT"—which just so happens to have the same name, date of commencement, purpose, tax ID number, and internal Wilmington account number as the Trust, is subject to an identical formation document as the Trust, holds the same assets as the Trust, and operates via the same forms, formalities, and personnel as the Trust.

Wilmington's entire argument was that the Plan Sponsor of the "Nova COT" is different from the Plan Sponsor of the "Grist Mill COT," and Wilmington only ever agreed to be the Insurance Trustee of the entity for which "Grist Mill" was a Plan Sponsor (nevermind that the Plan Sponsor of the Trust could be changed at the Plan Sponsor's discretion, and in fact, was changed from Grist Mill to Nova, not to mention the utter lack of evidence of the existence of two separate trusts). Regardless, Wilmington conceded that the "Grist Mill COT" is governed by an identical arbitration provision as the "Nova COT" and does not dispute that it managed, as Insurance Trustee, the Spencer policies. (Nor could it, given mountains of evidence of such, including Wilmington account statements identifying Wilmington as "Trustee for Charter Oak Trust" and listing the Spencer policies as Trust assets. *See id.*, at Exh. L: Account Statement.)

C.    The Motion to Compel Arbitration

After the state court case was removed to this Court, Universitas filed its Motion to Compel Arbitration. *See* Mot. to Compel Arbitration (Dkt. # 30) (July 24, 2015). In support of its motion, Universitas offered over a dozen exhibits establishing Wilmington's role as Insurance Trustee of the Trust containing the

Spencer policies.[1]  *See* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2015).  In response, Wilmington offered nothing more than its insistence that there exist two separate trusts and that Universitas' claims only arise under the trust for which Wilmington is not a trustee.  *See* Opp'n to Mot. to Compel Arbitration (Dkt. # 44) (Aug. 14, 2015).  In doing so, Wilmington admitted that it was the Insurance Trustee of, at a minimum, the so-called "Grist Mill COT" and, as such, would have responsibility for "life insurance policies that would be held under the Grist Mill COT."  *Id.*, at 5, 7.  It declined entirely to challenge the documentary evidence submitted by Universitas that proved that Wilmington acted as "Trustee for Charter Oak Trust" holding the Spencer policies.  *Id.*  It never questioned the ownership of the Spencer policies by the "Charter Oak Trust" or suggested that they were "mistakenly" delivered to Wilmington, placed in Wilmington's vault, and reflected on Wilmington account statements.  Further, Wilmington offered no argument or evidence that arbitration under the so-called "Grist Mill COT" was nevertheless barred by waiver or estoppel.  *Id.*; *see also* Reply in Support of Mot. to Strike (Dkt. # 53) (Sept. 11, 2015).

On February 17, 2016, the Court issued its Memorandum of Decision granting Universitas' Motion to Compel Arbitration.  The Court held that the "undisputed evidence demonstrates that, even assuming that there were two trusts named [Charter Oak Trust], Wilmington agreed to arbitrate and any all disputes relating to the [Charter Oak Trust] holding the insurance policies claimed by

---

[1] To appease Wilmington, Universitas also amended its Notice of Arbitration and Statement of Claim to invoke the arbitration provision of the so-called "Nova COT" and that of the so-called "Grist Mill COT."  *See* Reply in Support of Mot. to Compel Arbitration (Dkt. # 48) (Aug. 28, 2015), at Exh. B:  Am. Notice of Arbitration & Statement of Claim.

Universitas." *See* Memo. of Decision (Dkt. # 105) (Feb. 17, 2016), at 4.  Since Wilmington did not dispute that it "acted as insurance trustee for the Spencer policies," the Court declined to determine whether there, in fact, exist two separate trusts.[2] *Id.*, at 32.  Wilmington having conceded that it was the Insurance Trustee for the Spencer policies, that it was obligated to arbitrate any disputes related to those assets, and that Universitas' claims related to those assets, arbitration was mandated and Universitas' motion granted.

After being rebuffed in its dubious efforts to avoid adjudication of Universitas' claims, Wilmington now comes back to the Court and asks for a do-over.  It now claims that even though a valid arbitration agreement exists,

---

[2] The Court explained that it did not reach the question of the existence of two separate trusts because no evidence was submitted to the Court demonstrating that the "Nova COT" held the Spencer policies.  *Id.*, at 31 n.10.  The Court noted that had such evidence been submitted, it would have "concluded that the purported Grist Mill COT and Nova COT are the same trust because that evidence, along with the record evidence, would have demonstrated that both trusts held the Spencer policies."  *Id.*  Although it is not critical to resolution of the present motion, Universitas notes that Nova Group, Inc., has been judicially determined to be the Plan Sponsor and Trustee of the Charter Oak Trust holding the Spencer policies.  *See, e.g.*, *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 U.S. Dist. LEXIS 142902 (S.D.N.Y. May 21, 2013); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 U.S. Dist. LEXIS 1720 (S.D.N.Y. Jan. 4, 2013); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2012 U.S. Dist. LEXIS 166554 (S.D.N.Y. Nov. 21, 2012); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2012 U.S. Dist. LEXIS 144709 (S.D.N.Y. Oct. 5, 2012); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012).  Indeed, as noted in Universitas' Motion to Compel Arbitration, Wilmington responded, without question, to a subpoena *duces tecum* issued in connection with the Nova litigation seeking documents concerning Wilmington's role as "Insurance Trustee of the Charter Oak Trust."  *See* Memo. in Support of Mot. to Compel (Dkt. # 31) (July 24, 2015), at 10 n.4 & Exh. P.

Universitas has somehow amended or revoked that agreement, relieving Wilmington from its obligation to arbitrate. Alternatively, it offers entirely new arguments that it was never a trustee at all and "mistakenly" had possession of the Spencer policies.

In seeking its second bite at the apple, Wilmington relies on a single document, available on a public docket since at least November 2013, but which Wilmington declined to present to the Court in connection with Universitas' Motion to Compel Arbitration. It also relies on arguments that it could have, but declined, to present to the Court in connection with the Motion to Compel Arbitration. Wilmington's arguments are untimely. Nevertheless, contrary to Wilmington's breathless assertions, neither the document, nor Wilmington's specious arguments, undermines the Court's order that arbitration is mandated for any claims involving the Spencer policies. Wilmington's motion should be denied.

## II. <u>STATEMENT OF LAW</u>

Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). The grounds justifying reconsideration of a court order are narrow and confined to: "(1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice." *Greens v. City of Norwalk*, No. 3:14-CV-01016 (VLB), 2016 U.S. Dist. LEXIS 26131, at *5 (D. Conn. March 1, 2016) (quoting *Virgin A. Airways, Ltd. v. Nat'l Mediation*

6

*Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"Newly discovered evidence presented in support of a motion for reconsideration must be of the type which, with due diligence, could not have been discovered by the [movant] prior to entry of the judgment." *Brown v. City of Oneonta*, 858 F. Supp. 340, 343 (N.D.N.Y. July 17, 1994) (quoting *Music Research, Inc. v. Vanguard Recording Soc'y, Inc.*, 547 F.2d 192, 196 (2d Cir. 1976)); *see also Patterson v. Bannish*, No. 3:10-CV-1481 (AWT), 2011 U.S. Dist. LEXIS 66863, at **2– 3 (D. Conn. June 23, 2011). Thus, evidence is not "new" merely because it only came to the movant's attention after entry of a court order. *Brown*, 858 F. Supp. at 343. "[A] party cannot obtain reconsideration based upon evidence that it possessed at the time of its original [filing] but failed to present." *Ensign Yachts, Inc. v. Arrigoni*, 2010 U.S. Dist. LEXIS 74267, at *4 (D. Conn. July 23, 2010) (citing *Brocuglio v. Proulx*, 478 F. Supp. 2d 297, 300 (D. Conn. 2007)).

"[T]he standard on a motion for reconsideration is strict." *Elbert v. United States*, No. 3:09-CR-00285 (VLB), 2014 U.S. Dist. LEXIS 116461, at *6 (D. Conn. Aug. 21, 2014) (citing *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration will not be granted "where the moving party seeks solely to relitigate an issue already decided . . . or where the moving party seeks to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Protegrity Corp. v. Dataguise, Inc.*, No. 3:13-CV-00715 (VLB), 2014 U.S. Dist. LEXIS 132449, at *7 (D. Conn. Sept. 22, 2014) (quoting *Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Servs., Inc.*, 928 F. Supp. 287, 289 (S.D.N.Y. 1996)); *see also Parrish*, 253 F. Supp. 2d at 715 ("A . . . motion [for reconsideration] is not

intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided."). Indeed, as Wilmington expressly concedes, an "argument[] raised for the first time on a motion for reconsideration may be rejected as untimely." *See* Memo. in Support of Mot. for Reconsideration (Dkt. # 107-1) (March 2, 2016), at 6 (citing *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001)).

## III.   ARGUMENT

In seeking reconsideration of the Court's order, Wilmington claims that the Court "overlooked" critical evidence that Universitas "waived" its right to arbitrate its claims. The "evidence" consists of a single document that Wilmington dubiously calls an "Arbitration Waiver." Wilmington insists that this document somehow relieves Wilmington of its obligations under the "Grist Mill COT" to submit to arbitration. Alternatively, Wilmington requests a do-over, and simply argues that the Court got it wrong, raising, for the first time, strained arguments that Wilmington "accidentally" had the Spencer policies in its possession.

Wilmington's arguments are based on a fanciful rewriting of the procedural history of this dispute and phony premises. Wilmington never presented the alleged "new evidence" and arguments to the Court in opposition to Universitas' Motion to Compel Arbitration and cannot raise them for the first time here. Regardless, nothing in Wilmington's motion undermines the Court's order. Having failed to establish that the Court's order compelling arbitration must be reversed due to an intervening change of controlling law, new evidence, or constitutes clear

error or manifest injustice, Wilmington's motion must be denied.

A.     Wilmington's "New Evidence" is Neither "New" nor Evidence that the Court's Order Compelling Arbitration was Wrong.

1.     Wilmington offers no "new evidence" to justify reconsideration.

Wilmington's motion is largely premised on its speculative interpretation of a letter it claims was submitted by Universitas in a related arbitration involving the Spencer policy proceeds. *See id.*, at 2–3. Wilmington claims that this letter was only "discovered" in January 2016, "long after briefing was completed on the Motion to Compel Arbitration," and attempts to lay blame on Universitas for this purported delay. *Id.*, at 4–5. Nevertheless, Wilmington insists that it "promptly" brought this supposedly critical evidence to the Court's attention. *Id.*, at 4. Each of these assertions is easily refuted.

*First*, Wilmington admits that the document at issue is publicly available and that it located it as an exhibit to a pleading on the public docket of the "SDNY Litigation." Wilmington does not claim that it was previously unaware of the SDNY Litigation or that Universitas somehow attempted to—much less succeeded in—concealing the fact of the litigation or any filings made in the case from Wilmington's view. (Nor could it, given that Wilmington was served a subpoena in the case in June 2012. *See* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2015), at Exh. P: Subpoena.) Indeed, while Wilmington attempts to lay blame on Universitas for Wilmington's delay in reviewing the document, it admits that the document has been publicly available since at least <u>November</u>

<u>2013</u>.[3]  Wilmington offers no explanation for its delay in reviewing this public document nor any argument that the document was unavailable to Wilmington despite its exercise of due diligence.  Thus, the document does not constitute "new evidence" justifying reconsideration of the Court's order.  *See Brown*, 858 F. Supp. at 343; *see, e.g.*, *Universal Trading & Inv. Co. v. Credit Suisse Guernsey Ltd.*, No. 12 Civ. 0198 (PAC), 2013 U.S. Dist. LEXIS 50506, at *7 (S.D.N.Y. April 5, 2013) (denying reconsideration because alleged "new evidence" consisted of matters contained in the public record of a related litigation); *Mills v. New York*, No. 98 Civ. 1326 (LBS) (JCF), 2004 U.S. Dist. LEXIS 3637, at *4 (S.D.N.Y. March 10, 2004) (denying reconsideration because alleged "new evidence" concerned facts and arguments about a publicly available document).

*Second*, notwithstanding that the document was available to Wilmington long before Wilmington submitted its August 14, 2015, objection to Universitas' Motion to Compel Arbitration, Wilmington admits that it located the document in "early January 2016"—well before the Court's February 17, 2016, decision on Universitas' Motion to Compel Arbitration.  *See* Memo. in Support of Mot. for Reconsideration (Dkt. # 107-1) (March 2, 2016), at 4 & Exh. 5.  Wilmington offers no explanation for its failure, prior to the Court's decision on Universitas' motion, to submit the document and related argument in connection with the Motion to Compel Arbitration, nor any reason why the document and argument could not

---

[3] Although the date of the filing of the document in the SDNY Litigation is notably omitted from Wilmington's argument, the CM/ECF header on the document indicates that it was publicly filed on November 20, 2013—<u>years</u> prior to briefing on Universitas' Motion to Compel Arbitration.  *See id.*, at Exh. 1:  Letter; *see also id.*, at Exh. 3:  SDNY Litigation Docket, at 73, Dkt. No. 338 (dated November 20, 2013).

have been submitted in the exercise of due diligence.[4]

Instead, Wilmington attempts a Hail Mary. Wilmington claims that the document, and its purported impact on the Court's analysis of Universitas' Motion to Compel Arbitration, was presented to the Court via a supplemental submission by Wilmington in connection with a different motion—Wilmington's Motion to Remand. *Id.*, at 4. Unsurprisingly, Wilmington cites no legal authority for its novel proposition that the Court must scour the entire record of a case in deciding any particular motion. As Wilmington's "evidence" and argument was available to it during briefing on Universitas' motion, and is raised for the first time on reconsideration, it should be rejected.

> 2.    Wilmington's "Evidence" is Irrelevant to the Question of Arbitrability.

That Wilmington failed to offer the so-called "Arbitration Waiver" in connection with its opposition to Universitas' Motion to Compel Arbitration is no accident. The document is entirely irrelevant to the question of arbitrability. Instead, Wilmington seeks to litigate an affirmative defense to Universitas' claims that must be presented to the arbitrator.

The Second Circuit's decision in *Republic of Ecuador v. Chevron Corporation*, 638 F.3d 384 (2d Cir. 2011), is directly on point. At issue in *Ecuador*

---

[4] It is no answer that briefing on Universitas' Motion to Compel Arbitration was "closed." Wilmington has proven itself a prolific briefer and was well-aware—and took advantage—of procedures for submitting supplemental evidence and argument to the Court after the close of briefing on motions. *See, e.g.*, Wilmington's Motion for Leave to File Sur-reply Brief in Connection with Ridgewood's Motion for Protective Order (Dkt. # 82) (Jan. 26, 2016); Wilmington's Motion for Leave to File Supplemental Brief in Support of Motion to Remand (Dkt. # 88) (Feb. 2, 2016). Its decision not to do so here does not justify re-litigation of the question of arbitrability.

was whether Chevron—the party invoking an arbitration agreement—had waived or was estopped from pursuing arbitration as a result of its conduct in a related litigation. *Id.*, at 391–92. The Court held that the question of waiver or estoppel was one for the arbitration panel.

In reaching its decision, the Court first determined that a valid arbitration agreement existed between the parties. *Id.*, at 392–93. It then turned to the "arbitrability of Ecuador's waiver and estoppel claims." *Id.*, at 393. The Court noted that it had to approach the question "with a healthy regard for the federal policy favoring arbitration." *Id.* (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It explained that "[t]he Supreme Court has 'distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Id.* (quoting *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003)). A "question of arbitrability" "is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause,' as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "Questions of arbitrability" "should be decided by the courts unless 'there is <u>clear and unmistakable evidence</u> from the arbitration agreement . . . that the parties intended that [they] be decided by the arbitrator.'" *Id.* (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)). Thus, a question is not one of "arbitrability" "where parties would likely

expect that an arbitrator would decide the gateway matter." *Id.* (citing *Howsam*, 537 U.S. at 84). "[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively <u>not</u> for the judge, but for an arbitrator, to decide." *Id.*, at 393–94 (citing *Howsam*, 537 U.S. at 84).

The *Ecuador* Court noted that "[b]oth waiver and estoppel generally fall into that latter group of issues presumptively for the arbitrator." *Id.*, at 394; *see also Howsam*, 537 U.S. at 84 ("[T]he presumption is that the arbitrator should decide allegations of waiver." (internal quotations and citation omitted)); *Mulvaney Mech., Inc.*, 351 F.3d at 46 ("[D]efenses to arbitrability such as waiver, estoppel, or delay . . . are questions properly decided by arbitrators." (internal quotations omitted)); *Am. United Life Ins. Co. v. Travelers Indem. Co.*, No. 3:14-CV-1339 (WWE), 2015 U.S. Dist. LEXIS 108585, at **4–5 (D. Conn. Aug. 18, 2015) ("[T]he presumption is that the arbitrator should decide allegations of waiver, delay or a similar defense to arbitrability." (citation omitted)). However, the presumption did not need to be applied in the *Ecuador* case, because there was "clear and unmistakable evidence" that the parties intended questions of waiver and estoppel to be decided by the arbitral panel. *Republic of Ecuador*, 638 F.3d at 394.

The arbitration agreement at issue expressly adopted the rules of the United Nations Commission on International Trade Law ("UNCITRAL"), which provide that the arbitrator "shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the . . . arbitration agreement." *Id.* (quoting UNCITRAL Arbitration Rules art. 21, para. 1, GA. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976)). The Court explained that

Ecuador's waiver and estoppel arguments challenged the "'validity of the arbitration agreement because Ecuador argues that Chevron either waived its right to or is estopped from entering into a binding agreement to arbitrate." *Id.* Accordingly, the UNCITRAL rules adopted by the parties to the arbitration agreement required that Ecuador's challenge be referred to the arbitral panel. *Id.*

Thus, the Court was unpersuaded by Ecuador's argument that its waiver and estoppel arguments "undermin[ed]" the arbitration agreement itself and prevented the arbitration from going forward. *Id.*, at 394. As there was an enforceable agreement to arbitrate, remaining challenges to suit had to be referred to arbitration. *Id.*, at 394–95.

The same result is compelled here. Wilmington does not challenge the Court's finding that there exists an enforceable agreement to arbitrate, or that Universitas' claims fall within the scope of that agreement. Instead, Wilmington, just like the Republic of Ecuador, claims that Universitas has waived its right to proceed in arbitration via alleged conduct in a related litigation. Just like in the *Ecuador* matter, the arbitration agreement here expressly adopts the Commercial Arbitration Rules of the American Arbitration Association, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or controversy." *See* Memo. of Decision (Dkt. # 105) (Feb. 17, 2016), at 6 n.2. Thus, just like in *Ecuador*, Wilmington's claims of waiver or estoppel do not constitute a "question of

arbitrability," but present a "gateway matter" to be decided in arbitration.[5]

Wilmington's request for reconsideration must be denied.[6]

---

[5] The decisions relied on by Wilmington are easily distinguishable and do not demand a different result. For example, *Apple & Eve, LLC v. Yantai N. Andre Juice Company*, 610 F. Supp. 2d 226 (E.D.N.Y. 2009), has been abrogated by the Second Circuit's decision in *Republic of Ecuador*. *Id.*, at 230–31 (declining to refer the question of waiver to the arbitrator because the Second Circuit had yet to rule on whether such questions involved "arbitrability"). Nevertheless, at issue was whether the party seeking to arbitrate had "acted in a manner . . . inconsistent with the preservation of its right to arbitrate" by commencing litigation in another court to invalidate the same arbitration agreement it was seeking to enforce in the New York court. *Id.*, at 231. As the *Apple & Eve* court noted, in evaluating "waiver" in the context of an arbitration agreement, the issue is whether the party seeking to enforce an arbitration agreement has engaged in conduct indicating its desire to <u>litigate</u> rather than arbitrate. *Id.*, at 229. Wilmington can point to no evidence that Universitas has renounced its right or desire to proceed in arbitration. Instead, Wilmington admits that Universitas has consistently invoked and enforced the arbitration agreement of the Charter Oak Trust Declaration of Trust. Universitas' litigation efforts have been confined to post-arbitration judgment enforcement. *See supra* note. 2.

Wilmington fares no better under the other decision cited in its motion. The First Circuit's decision *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005), is not binding precedent in this Court, especially in light of the Second Circuit's decision in *Republic of Ecuador*. Regardless, the decision involved a broader policy question about whether an employer's participation in an EEOC employment discrimination investigation operates as a waiver of an arbitration provision in an employment agreement (the court held that it did not). *Id.*, at **3–4. The decisions in *Tech. in P'ship v. Rudin*, 538 F. App'x 38 (2d Cir. 2013), *Baker & Taylor, Inc. v. Alphacraze.com Corp.*, 602 F.3d 486 (2d Cir. 2010), *La. Stadium & Exposition District v. Merrill, Lynch, Pierce, Fenner & Smith*, 626 F.3d 156 (2d Cir. 2010), and *Brookridge Funding Corp. v. Nw. Human Resources, Inc.*, 170 F. App'x 170 (2d Cir. 2006), all predate *Republic of Ecuador*. Regardless, nothing in the *Tech. in P'ship* or *La. Stadium* decisions indicate whether the parties had agreed to refer the question of waiver to arbitration; at issue in *Baker & Taylor, Inc.*, was not "waiver," but the parties' joint declination to enforce their arbitration agreement; and in *Brookridge Funding Corp.*, the party invoked arbitration for the first time in connection with an appeal from a litigation judgment. The decision to evaluate waiver by the court in *Discovery Property & Casualty Insurance Co. v. TETCO, Inc.*, 2014 U.S. Dist. LEXIS 20306, at **23–24 (D. Conn. Feb. 19, 2014), cannot stand in light of *Republic of Ecuador*. Nevertheless, it hardly supports Wilmington as the Court found no waiver of the right to arbitrate even where the parties seeking arbitration delayed in invoking it. *Id.*, at **24–26. Instead, the Court noted that the parties there—like Universitas here—had "consistently asserted their rights to arbitrate." *Id.*, at *28.

[6] Even if binding precedent did not undermine Wilmington's arguments, it has failed to establish an enforceable "waiver" by Universitas of its right to proceed in arbitration. "Waiver is the 'intentional relinquishment of a known right.'" *U.S. D.I.D. Corp. v. Windstream Communs., Inc.*, 775 F.3d 128, 136 (2d Cir. 2014) (quoting *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999)). "[W]aivers are never to be lightly inferred" and,

## B. Wilmington's "New Arguments" are Also Time-Barred and Fail to Establish that the Court's Order Must be Reversed.

Wilmington's second tactic is even less convincing that the first. Despite never identifying them during briefing on Universitas' Motion to Compel Arbitration, Wilmington now offers a host of supposed "factual disputes" that the Court "overlooked" and which Wilmington claims demand reversal of the order compelling arbitration. Wilmington now argues that it was not the trustee of <u>any</u>

---

where they involve waivers of an arbitration agreement, "any doubts 'are resolved in favor of arbitration.'" *Id.* (quoting *Mooney v. City of N.Y.*, 219 F.3d 123, 131 (2d Cir. 2000); *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569 (2d Cir. 2015) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)). Thus, a waiver can be inferred "only where the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." *U.S. D.I.D. Corp.*, 775 F.3d at 136 (quoting *Mooney*, 219 F.3d at 131). In the context of an arbitration waiver, the inquiry is on whether a party to an arbitration agreement engaged in conduct indicating its intent <u>litigate</u>, notwithstanding its right to proceed in arbitration. Thus, the party resisting arbitration must, as a threshold matter, demonstrate that the opposing party has "act[ed] inconsistently with its contractual right to arbitration." *LG Elecs., Inc.*, 623 F. App'x at 570 (quoting *La. Stadium & Exposition Dist.*, 626 F.3d at 159). Wilmington can make no such showing. Instead, Wilmington has shown nothing more than that Universitas, in August 2010, based on information available to it at the time, declined to pursue claims against Grist Mill Capital, LLC. Universitas has, at all times, consistently asserted its right to arbitrate the claims it has brought in connection with wrongdoing by the Charter Oak Trust and its trustees.

Equally unpersuasive is Wilmington's claim that it should be relieved of its arbitration obligations because it was "prejudiced" by Universitas' failure to sue Wilmington when it sued Nova Group, Inc. *See* Memo. in Support of Mot. for Reconsideration (Dkt. # 107-1) (March 2, 2016), at 9–10. First, as noted in Universitas' Statement of Claim, Wilmington's identity was a carefully held secret throughout the Nova arbitration and much of the post-arbitration litigation. *See* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2015), at Exh. C: Notice of Arbitration & Statement of Claim, ¶¶ 30, 52. Second, Wilmington has been aware of the Nova litigation since <u>at least</u> June 2012 (when it was served a subpoena *duces tecum* in the matter). *Id.*, at Exh. P. Despite its obligations under the Declaration of Trust to, *inter alia*, "compromise, settle or adjust any claim or demand by or against the Trust," *id.* ¶ 41, Wilmington did not appear in the Nova litigation or undertake any efforts to protect or assist its Trust beneficiary. It can hardly complain now about its own failure to speak up earlier. Regardless, Wilmington's complaints go to its defenses to Universitas' claims and must be referred to the arbitrator for resolution. They do not negate the existence of an enforceable agreement to arbitrate.

trust involving the Spencer policies and that it instead was only a bailee of the policies, which it took possession of by "mistake or accident." *See* Memo. in Support of Mot. for Reconsideration (Dkt. # 107-1) (March 2, 2016), at 11–12. Wilmington's self-serving arguments smack of desperation. Regardless, they were never presented to the Court in the first instance and are not properly considered for the first time here.

During briefing on Universitas' Motion to Compel Arbitration, the Court was presented with over a dozen documents from Wilmington's own files that established a direct line from Sash Spencer to the Charter Oak Trust to Wilmington, including Wilmington's own account statements identifying it as "Trustee for Charter Oak Trust" and containing the Spencer policies. *See generally* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2015). In its response to Universitas' Motion to Compel Arbitration, Wilmington never denied that it was the Insurance Trustee of, at a minimum, the "Grist Mill COT" and that it held the Spencer policies in connection with its role as Insurance Trustee. It conceded that the so-called "Grist Mill COT" contained an arbitration agreement and that Universitas' claims were within the scope of that agreement. It never questioned the "ownership" of the Spencer policies or suggested that it had possession of by mistake.

Only now, after losing the Motion to Compel Arbitration, does Wilmington present its fanciful arguments about bailments and the existence of an even more mysterious <u>third</u> Charter Oak Trust that it now claims actually owned the Spencer policies. Wilmington's attempt to distance itself from its own documents is

unpersuasive. First, assuming *arguendo* that Wilmington "mistakenly" or "accidentally" held and monitored the Spencer policies,[7] it was not merely a passive receptacle, but, in fact, "presently and unequivocally manifest[ed] an intention to impose upon [it]self the enforceable duties of a trust nature" when it identified and held itself out as "Trustee for Charter Oak Trust" and distributed account statements in that name reflecting the Spencer policies. *See* Memo. in Support of Mot. for Reconsideration (Dkt. # 107-1) (March 2, 2016), at 12–13 (quoting *Hansen v. Norton*, 172 Conn. 292, 295–96 (1977)).

Similarly far-fetched is Wilmington's new claim that the Spencer policies were not owned by the "Nova COT" <u>or</u> the "Grist Mill COT," but by yet a <u>third</u> COT in the name of "Wayne Bursey, Trustee of the Charter Oak Trust, dated October 1, 2006." *Id.*, at 13–14. Wilmington feigns ignorance about the identity of Mr. Bursey, claiming that "Universitas has presented no evidence . . . that a declaration of trust even exists[] in which Wayne Bursey was the trustee of the Charter Oak Trust. *Id.*, at 14. On the contrary, Wayne Bursey, "President" of "Nova Group, Inc." is the signatory on the so-called "Nova COT" that Wilmington, itself, attached to its Original Complaint in this matter. *See* Notice of Removal (Dkt. # 1) (June 12, 2015), at Exh. B: Compl.

Indeed, that the Spencer policies—in Wilmington's possession—expressly

---

[7] Wilmington's claim there is a factual dispute over whether it "monitored" the Spencer policies, and its feigned ignorance "as to what 'monitored' even means," is plainly defeated by its own documents, which, again, establish that Wilmington took possession of the Spencer policies, placed them in its vault under the "Charter Oak Trust" account number, and monitored them—as reflected on its account statements for the "Charter Oak Trust." *See* Memo. in Support of Mot. to Compel Arbitration (Dkt. # 31) (July 24, 2014), at 6–8.

identify Mr. Bursey, the President of Nova Group, Inc., as the Trustee of the Charter Oak Trust into which the Spencer policies were placed, and were held in an account for the "Charter Oak Trust" for which Wilmington admittedly acted as Insurance Trustee does not suggest the existence of three trusts, as Wilmington suggests, but the existence of only one. If Wilmington's (untimely) arguments do anything, they bolster Universitas' consistent contention that Wilmington's "multiple trusts" theory is a figment of its imagination and that Wilmington was the trustee of the one and only Charter Oak Trust, for which Nova Group, Inc., was the ultimate Plan Sponsor.

Nevertheless, the Court "overlooked" nothing in its Memorandum of Decision granting Universitas' Motion to Compel Arbitration. It carefully considered all the evidence and arguments put before it by Universitas and Wilmington and concluded rightfully, that whether there exist two "Charter Oak Trusts," or only one, Wilmington agreed to arbitrate all claims involving the Spencer policies. Wilmington offers nothing to the contrary. Accordingly, its Motion for Reconsideration must be denied.

IV.    <u>CONCLUSION</u>

Wilmington offers nothing establishing its entitlement to reconsideration. Instead, its motion is the prototypical "do-over" that the law does not countenance. Regardless, Wilmington offers nothing to suggest that the Court's order compelling arbitration was wrong. Wilmington's Motion for Reconsideration should be denied.

Respectfully submitted,


/s/ *Shannon A. Lang*
John M. Wolfson
Federal Bar No. ct03538
jwolfson@feinerwolfson.com
Benjamin M. Wattenmaker
Federal Bar No. ct26923
bwattenmaker@feinerwolfson.com
FEINER WOLFSON LLP
One Constitution Plaza, Suite 900
Hartford, Connecticut  06103
(860) 713-8900 tel.
(860) 713-8905 fax

Shannon A. Lang
Federal Bar No. ct29840
STURM LAW, PLLC
723 Main Street, Suite 330
Houston, Texas  77002
(713) 955-1800 tel.
(713) 955-1078 fax
slang@sturmlegal.com

*Attorneys for Defendant*
*Universitas Education LLC*

## CERTIFICATE OF SERVICE

I certify that on April 13, 2016, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system, which should have generated electronic notification to all counsel of record:

David T. Martin
dmartin@cl-law.com
John Cannavino
jcannavino@cl-law.com
CUMMINGS & LOCKWOOD, LLC
Six Landmark Square
Stamford, Connecticut 06901
(203) 327-1700 tel.
(203) 708-3865 fax

Joseph P. Davis, III
davisjo@gtlaw.com
GREENBERG & TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
(617) 310-6204 tel.
(617) 279-8403 fax

*Attorneys for Plaintiff Wilmington Savings Fund Society, FSB*, as successor-in-interest to *Christiana Bank & Trust Company*

Scott M. Harrington
sharrington@dmoc.com
DISERIO, MARTIN, O'CONNOR &
CASTIGLIONI, LLP
One Atlantic Street
Stamford, Connecticut 06901
(203) 358-0800 tel.

Howard J. Kaplan
hkaplan@kaplanrice.com
Sarah L. Depew
sdepew@kaplanrice.com
KAPLAN RICE, LLC
142 West 57th Street, Suite 4A
New York, New York 10019
(212) 333-0219 tel.
(212) 235-0301 fax

*Attorneys for Ridgewood Finance II,* as successor-in-interest to *Ridgewood Finance, Inc.*

/s/ *Shannon A. Lang*
Shannon A. Lang