UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor-in-interest to Christiana Bank & Trust Company, | : : : : | |
| Plaintiff, | : : | CIVIL CASE NUMBER: |
| v. | : : | 3:15-cv-911 (VLB) |
| UNIVERSITAS EDUCATION, LLC, and RIDGEWOOD FINANCE II, LLC, as successor-in-interest to Ridgewood Finance, Inc. | : : : : : : | March 3, 2017 |
| Defendants. | : : | |

## MEMORANDUM OF DECISION

The Court granted Universitas Education, LLC's ("Universitas") Motion to Compel Arbitration between Universitas and Wilmington in a Memorandum of Decision dated February 17, 2016.  [Dkt. No. 105.]  Wilmington Savings Fund Society ("Wilmington") timely moved for reconsideration.  [Dkt. No. 107; Local R. Civ. P. 7(c).]  For the reasons set forth below, the Motion for Reconsideration is DENIED.

I. Facts

The Court assumes the parties are familiar with the facts underlying this case.  For the purpose of this Decision, the Court briefly states the facts relevant to the disputed arbitration agreement.  Universitas' arbitration demand asserts that Holding Capital Group, Inc., a participating employer in a Multiple Employer Welfare Arrangement ("MEWA") named Charter Oak Trust ("COT"), purchased

1

two life insurance policies totaling $30 million for its chief executive officer, Sash A. Spencer. [Dkt. No. 1-1 at ¶ 48.] Universitas also asserts Spencer selected Universitas, the research and development arm of a charitable foundation, as his insurance beneficiary. *Id.* at ¶¶ 9, 48. Spencer died in 2008, and the insurance company tendered his death benefits to COT in 2009. *Id.* at ¶ 50. Universitas's demand for those benefits was unsuccessful. *Id.* at ¶ 51.

Wilmington agreed to serve as insurance trustee for what Wilmington refers to as the Grist Mill COT.[1] [Dkt. No. 31-5 (Appointment Agreement).] By the terms of the Appointment Agreement, Wilmington agreed to arbitrate any and all disputes relating to its performance of its duties as trustee of the purported Grist Mill COT. [Dkt. No. 31-5 (Grist Mill COT).] As insurance trustee for the purported Grist Mill COT, Wilmington opened a corporate trust account with the identification number CH125161-0. [Dkt. Nos. 31-8 (Letter); 31-9 (New Account Form).] One of the Spencer policies was placed in the trust account numbered CH125161-0, opened by Wilmington incident to its appointment as insurance trustee. [Dkt. Nos. 31-11 (Trust Vault Receipt); 31-12 (Account Statement).] Both policies were monitored by Wilmington. *Id.*

In its Memorandum of Decision, the Court concluded from the aforementioned evidence that Wilmington acted as insurance trustee for the Spencer policies. [Dkt. No. 107-1 at 30-32.] The Court also concluded Wilmington

---

[1] Wilmington asserts two separate trusts existed – the "Grist Mill COT" and the "Nova COT" – and that Nova COT held the Spencer policies. The Court did not determine in its Memorandum of Decision whether one or two trusts existed, nor does it do so now, because there is no evidence demonstrating that a trust named COT and sponsored by Nova held the Spencer policies.

2

agreed to arbitrate any and all disputes relating to its performance of its duties as insurance trustee, as evidenced by the Appointment Agreement. *Id.* Wilmington disputes this finding in its Motion for Reconsideration.

## II.  Statement of Law

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). There are three grounds for granting a motion for reconsideration: intervening change in controlling law, the availability of newly discovered evidence or a need to correct a clear error or avoid manifest injustice. *Virgin Atl. Airways Ltd. v. National Mediation Board*, 956 F2d. 1245, 1255 (2d Cit. 1992). Evidence is "newly discovered" for the purpose of a motion for reconsideration if the movant "could not have discovered the new evidence earlier had he exercised due diligence." *Patterson v. Bannish*, 3:10-cv-1481, 2011 WL 2518749, at *1 (D. Conn. June 23, 2011); *Robinson v. Holland*, 3:02-cv-1943, 2008 WL 1924971, at *1 (D. Conn. Apr. 30, 2008) (same). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Wiseman v. Greene*, 204 F3d 393, 395 (2d Cir. 2000) (per curium).

## III.  Analysis

Wilmington raises three arguments for reconsideration. Each fails to meet any of the three grounds for granting a motion for reconsideration.

3

**First,** Wilmington disingenuously asserts the Court "ignore[d]" evidence that Universitas admitted in a 2010 arbitration that Universitas has no arbitration agreement with Grist Mill Capital. [Dkt. No. 107-1 at 8.] Wilmington supports this argument with a letter from Universitas to an arbitrator in the matter *Universitas Education, LLC v. Nova Group, Inc., Wayne Bursey, Benistar Admin. Services, Inc., Donald Trudeau, Grist Mill Capital, LLC and Daniel E. Carpenter*, dated August 19, 2010. [Dkt. No. 107-2.] In the letter, Universitas states "no arbitration agreement exists between Universitas and Grist Mill Capital." *Id*. The letter was publicly filed on November 20, 2013 in a case pending in the Southern District of New York. *Id*. However, Wilmington asserts it did not discover the letter until January 2016. [Dkt. No. 107-1 at 4.] The letter was not filed with the Court in this case and thus the Court could not have "ignore[d]" evidence that Universitas admitted in the 2013.

The letter Wilmington offers to assert Universitas has no arbitration agreement with Grist Mill is not "newly discovered" evidence for the purpose of a motion for reconsideration, as Wilmington has not established why it "could not have discovered the new evidence earlier had he exercised due diligence." *Patterson*, 2011 WL 2518749 at *1. Wilmington discovered the letter in 2016 on a public docket, where it had been available since November 2013. Wilmington does not indicate why it could not have discovered the letter sooner with due diligence. Wilmington also asserts no intervening change in law or controlling legal decisions which made the letter relevant after the Court rendered its decision. Wilmington's first argument for reconsideration fails.

4

Wilmington next argues the Court failed to resolve material factual disputes in its Decision, including whether Wilmington agreed to act as insurance trustee for the owner of the Spencer policies and whether any such agreement includes a binding arbitration clause. [Dkt. No. 107-1 at 11.] In its Order compelling arbitration, the Court addressed both of these issues.

First, the Court found that Wilmington "agreed to serve as insurance trustee for the purported Grist Mill COT" based on (1) Wilmington's Appointment Agreement, (2) a New Account Form indicating Wilmington opened a corporate trust account as "Grist Mill's" trustee, and (3) trust vault receipts and account statements showing Wilmington monitored the Spencer policies placed in that trust account. [Dkt. No. 105 at 31 (citing Dkt. Nos. 31-5 (Appointment Agreement), 31-9 (New Account Form), 31-11 (Trust Vault Receipt, 31-12 (Account Statement)).] The Court also found Wilmington "agreed to arbitrate any and all disputes relating to the purported Grist Mill COT by virtue of its appointment as insurance trustee," as evidenced by the Appointment Agreement. [Dkt. No. 105 at 31 (citing Dkt. No. 31-5).] Based on those findings, the Court concluded that "Wilmington acted as insurance trustee for the Spencer policies pursuant to the appointment agreement in which it admittedly agreed to arbitrate any and all disputes relating to its performance of its insurance trustee duties." [Dkt. Nos. 105 at 32; 107-1 at 12.]

Wilmington raises no newly discovered evidence or overlooked evidence presented in the initial briefing which would require the Court to reconsider its findings. Wilmington asserts "the Grist Mill COT limited [Wilmington's] authority

as the Insurance Trustee to only those policies that were controlled by Grist Mill Capital." [Dkt. No. 107-1 at 12.]  However, Wilmington offers no evidence – new or overlooked – establishing the Spencer policy placed in the Grist Mill COT was not "controlled by" Grist Mill, rendering Wilmington its trustee.

Rather, Wilmington raises a new legal argument that its possession of the Spencer policies constituted a "constructive bailment . . . since [the Spencer] policies were not owned by the Grist Mill COT and such possession was by mistake or accident." [Dkt. No. 107-1 at 13.]  Wilmington cites one Connecticut Superior Court case from 2008 for the premise that "constructive bailment arises when possession of personal property passes from one person to another by mistake or accident," but offers no intervening change in controlling law necessitating reconsideration of the Court's Order.  *Id.* (citing *H.J. Kelly & Assocs. v. Meriden*, No. CV030285781, 2008 WL 496688, at *7 (Conn. Super. Ct. Jan. 17, 2008).  To the extent that Wilmington obtained the Spencer Policies accidently, it dealt with the policies under the mistaken understanding that it had authority to do so incident to the Appointment Agreement, thus making its conduct subject to arbitration under the Appointment Agreement.

Wilmington's constructive bailment is not a proper argument to raise in a motion for reconsideration.  Wilmington did not raise a constructive bailment argument at all in its initial briefing, the ruling on which it now seek reconsideration.  Wilmington raises no "intervening change in controlling law" or "controlling decisions . . . hat were put before [the Court] on the underlying motion."  *Virgin Atl. Airways Ltd.*, 956 F2d. at 1255; *Patterson*, 2011 WL 2518749

6

at *1.  Nor does Wilmington argue that some intervening law of bailment, not relevant at the time its original motion, has emerged to warrant consideration of this omitted theory on a motion for *re*consideration.  As a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" Wilmington's second argument for reconsideration fails.  *Analytical Surveys, Inc. v. Tonga Partners*, *L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). To rule otherwise is inconsistent with the principles of fairness, finality, and judicial efficiency.  Were this not the law, every loosing party could scour every obscure legal source to scrounge for arcane theories indefinitely and file motions for reconsideration in perpetuity in hopes of either finding a winning argument or either exhausting or bankrupting its opponent into capitulation.

Finally, Wilmington asserts "the best evidence as to which Charter Oak declaration of trust (if any) owned the Spencer policies are the Spencer policies themselves and their respective applications for insurance.  [Dkt. No. 107-1 at 13.] Wilmington asserts the policies state the owner of the policies was "Wayne Bursey, Trustee of the Charter Oak Trust."  *Id*. at 14.  From this evidence, Wilmington concludes neither Grist Mill nor Nova owned the Spencer policies, but rather a third, distinct trust called Charter Oak Trust owned the policies.  *Id*. Wilmington asserts it did not consent to act as trustee for the "Charter Oak Trust."  *Id*. at 14-15.  Wilmington asserts "there is no evidence before the Court as to the identity of the owner of the Spencer policies."  [Dkt. No. 107-1 at 13.]  These Arguments are not only improper to raise on a motion for reconsideration, they

ignore the uncontested facts which the Court does know. They ignore the fact that Wilmington acted as though it was the trustee of the trust which was entitled to the Spencer Policies.  They also ignore the fact that Wilmington failed in its original briefing to identify any capacity, other than as trustee of the Grist Mill COT, under which Wilmington would have acted in respect to the Spencer Policies. While this Court will be the first to say the underlying facts are murky, that in and of itself does not entitle Wilmington a second bite the apple it has already devoured.  Further, for the reason stated above, any attempt would be unavailing.

Wilmington tacitly admits that it is attempting to re-litigate the matter by admitting "none of the[] documents" on which Wilmington bases this argument were presented to the Court with the Motion to Compel Arbitration.  *Id*. at 13.  This is patently impermissible.

 IV.    <u>Conclusion</u>

For the foregoing reasons, the Court DENIES Wilmington's motion for reconsideration of the Court's Order Compelling Arbitration.

IT IS SO ORDERED.

                                        /s/
                                    **Vanessa L. Bryant**
                                    **United States District Judge**

Dated at Hartford, Connecticut, March 9, 2017.